CITY OF MILWAUKEE, Plaintiff-Intervenor-
Appellant-Cross Petitioner,

STATE of Wisconsin, Plaintiff,

v.

Stefan NELSON, Defendant-Respondent-Petitioner.

Supreme Court

*No. 86–2234–CR. Argued November 2, 1988.—Decided May 11, 1989.*

(Also reported in 439 N.W.2d 562.)

435

For the defendant-respondent-petitioner there were briefs and oral argument by *Peter D. Goldberg,* assistant state public defender.

For the plaintiff-intervenor-appellant-cross petitioner there were briefs by *Scott G. Thomas,* assistant city attorney, and *Grant F. Langley,* city attorney, Milwaukee, and oral argument by *Mr. Thomas.*

Amicus curiae brief was filed by *William A. Pangman* and *William A. Pangman & Associates,* Waukesha, for American Civil Liberties Union of Wisconsin Foundation and Wisconsin Association of Criminal Defense Lawyers.

DAY, J.   This is a review of an unpublished court of appeals' decision which reversed an order of the Circuit Court for Milwaukee County, Honorable Russell W. Stamper, Judge. The circuit court had ruled that Milwaukee City Ordinance 106–31(1)(a),[1] a loitering ordinance, was unconstitutionally vague and overbroad. It also found the ordinance and sec. 800.02(6), Stats. 1987–88[2] which permits arrest for ordinance violations, contravened the fourth amendment of the

---

[1]106–31. *Loitering or Prowling.* (1) Whoever does any of the following within the limits of the city of Milwaukee may be fined not more than five hundred dollars ($500) or upon default of payment thereof, shall be imprisoned in the house of correction of Milwaukee county for not more than 90 days.

(a)   LOITERING. Loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a police officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstances makes it impracticable, a peace officer shall prior to any arrest for an offense under this section, afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the peace officer at the time, would have dispelled the alarm.

[2]800.02 Form of citation, complaint, summons and warrant in municipal ordinance violation cases . . . . (6) Authority to arrest without a warrant. A person may be arrested without a warrant for the violation of a municipal ordinance if the arresting officer has reasonable grounds to believe that the person is violating or has violated the ordinance.

United States Constitution[3] and art. I, sec. 11, of the Wisconsin Constitution.[4] The court of appeals reversed these determinations. We affirm the court of appeals.

There are four issues on this review. First, is Milwaukee City Ordinance 106–31(1)(a), unconstitutionally vague? We conclude it is not. Second, is Milwaukee City Ordinance 106–31(1)(a), unconstitutionally overbroad? We hold it is not. Third, do Milwaukee City Ordinance 106–31(1)(a), and sec. 800.02(6), Stats., violate the fourth amendment? We conclude they do not. Fourth, has the City of Milwaukee (City) exceeded its municipal power by enacting an ordinance which allows for arrest on reasonable suspicion? We conclude that the ordinance only allows arrest where there is probable cause to believe the ordinance has been violated and therefore, the City has not exceeded its power.

This ordinance allows a very modest and relatively unobtrusive inquiry by police officers of those whose loitering or prowling under circumstances described in the ordinance arouses suspicion of potential criminal activity. Several courts have wisely upheld this very type of ordinance. We join them.

---

[3]UNITED STATES CONSTITUTION .... FOURTH AMENDMENT. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[4]WISCONSIN CONSTITUTION. ARTICLE I. DECLARATION OF RIGHTS .... Searches and seizures. Section 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

On March 4, 1985, Stefan Nelson (Nelson) was arrested by two Milwaukee police officers for violating Milwaukee City Ordinance 106-31(1)(a), which prohibits loitering and prowling. At approximately 7:30 p.m., the two officers observed Mr. Nelson on a street corner in front of a tavern called the Cobra Club. The area was allegedly a high crime area with reported drug trafficking, loitering, and public drinking. "No loitering" signs were posted at each of the four corners of the intersection near where the arrest occurred.

From about a block and a half away, the officers, using binoculars, observed Nelson and another person shaking hands with pedestrians and automobile passengers. The handshake was described as a clasping of the fingers together, twisting them back and forth and then reclasping them. The handshakes were characterized as "friendly." Nelson would approach the automobiles and lean toward the passenger door, resting his hands just inside the window. At no time did the officers observe an exchange of money or other items. They did not know Nelson and they had no information that he was a suspect or was wanted in connection with any crime. After about fifteen minutes, the officers approached Nelson and his companion in their squad car and Nelson and his companion hurriedly entered the tavern.

The officers circled the block and returned to their initial observation point. Shortly thereafter, Nelson and the other person emerged from the tavern and resumed shaking hands with pedestrians and automobile passengers. The officers waited another five to ten minutes and then reapproached Nelson in their squad car. Nelson quickly reentered the tavern. This time, however, the officers followed him inside and asked him what he was doing outside the tavern to which he

440

replied "nothing." Nelson was then arrested for loitering in violation of Milwaukee City Ordinance 106–31(1)(a).

Nelson was "patted down" but no weapon was found.[5] He was placed in a police van which took him to the police station. Shortly after Nelson had left the van, it was searched and a twenty-five caliber handgun was discovered. Nelson admitted the gun was his, that he had concealed it in his pants, and that he had placed it in the van. He also stated he had stolen the handgun. Nelson was subsequently charged with violating sec. 941.23, Stats. (carrying a concealed weapon), and secs. 943.20(1)(a) and (3)(a), (theft).

In a separate action Nelson pled guilty in municipal court to violating the loitering ordinance. On the criminal charges, however, Nelson's counsel filed various pretrial motions including a motion to suppress evidence obtained from an illegal arrest and a motion to dismiss the complaint.

A suppression hearing was held which included testimony by the arresting police officers. At the end of the hearing, Nelson's counsel orally requested a declaratory judgment pursuant to sec. 806.04, Stats., to declare the Milwaukee Loitering Ordinance unconstitutional. Counsel for Nelson also challenged the constitutionality of an arrest for an ordinance violation and the extension of the municipality's police power in allowing such an arrest.

A written motion for declaratory judgment as to the constitutionality of the loitering ordinance and sec. 800.02(6), Stats., was filed with the circuit court. This

---

[5]The "pat down" was obviously not very effective; it turned out Nelson was carrying a gun.

motion was served on the district attorney, the city attorney, and the attorney general.

Although not a party in the criminal proceeding, the City appeared and filed a brief arguing that it could not be made a party to a declaratory judgment action arising from a state criminal action. The City also contended the ordinance was constitutional.

After taking briefs on the various issues, the circuit court rendered an oral decision on the matter on November 18, 1986, and a written decision on November 21, 1986. It ruled that the ordinance, alone and in combination with sec. 800.02(6), Stats., violated the fourth amendment of the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution by allowing an arrest on less than criminal probable cause. The circuit court also held the ordinance was unconstitutionally vague and overbroad. In addition, the circuit court found no evidence of probable cause to believe that Nelson had violated the ordinance.[6] The evidence resulting from Nelson's arrest was suppressed as fruit of an illegal arrest. The declaratory judgment was ruled appropriate in the case and the City was enjoined from enforcing the ordinance.

---

[6]There is nothing in the record which shows that the State of Wisconsin challenged the circuit court's holding that "there was no probable cause to believe [Nelson] had violated the ordinance" and that "any of the fruits of the search must be suppressed." Consequently, this court does not review the validity of these holdings in this opinion.

The record shows the State of Wisconsin declined to participate in the appeal to the court of appeals or in the petition for review to this court.

The City intervened in the action and appealed the circuit court's ruling on the constitutionality of the ordinance.[7]

In an unpublished opinion, the court of appeals reversed the judgment of the circuit court. It held that Nelson's conduct fell within the "hard core" proscriptions[8] of the ordinance and therefore he could not complain that its provisions were unconstitutionally vague. The court of appeals also concluded the ordinance was not unconstitutionally overbroad. In addition, no fourth amendment violation was found. Nelson petitioned this court for review and the court accepted his petition.

The Milwaukee Loitering Ordinance 106–31(1)(a), is patterned after sec. 250.6 of the Model Penal Code (Official draft, 1962) which was drafted by the highly respected American Law Institute. Extraordinary care

---

[7]The City also appealed the appropriateness of using a declaratory judgment in a criminal proceeding and whether the circuit court could enjoin the City from enforcing the ordinance. The court of appeals held that it was permissible to allow a declaratory judgment in this case. It also concluded that the circuit court could enjoin the City to prevent enforcement. The City cross-petitioned on these issues and we accepted the cross-petition.

We decline to decide those issues. Both parties have asked this court to reach the constitutional merits of the ordinance regardless of our decision on the issues of the cross-petition. This court may decide the constitutionality of statutes even if the action may be moot if they are of sufficient public importance. *See Doering v. Swoboda*, 214 Wis. 481, 488, 253 N.W.2d 657 (1934). Because our ruling on the constitutionality of the ordinance is dispositive of the case we decline to decide the issues presented on the cross-petition.

[8]The court of appeals held Nelson's conduct "meets the 'hard core' proscriptions of the zone of prohibited conduct in the ordinance so that no reasonable person could have doubted its criminality." (Slip opinion, page 11.)

and effort was put into the drafting of the Model Penal Code and sec. 250.6. The American Law Institute (ALI) was established in 1923. The Model Penal Code drafted by the ALI, had its beginning in 1950.

> In the succeeding ten years there were numerous meetings of Advisors, usually lasting for three days, at which basic issues of policy were debated and resolved, studies and drafts prepared by the Reporters or Consultants were considered and revised, criticisms of the tentative drafts examined and reviewed, and the entire work subjected to a final critical revision. The product of the Reporters and Advisors was in turn considered by the Council in some thirty-one Council Drafts examined and debated in the years from 1953 to 1962. After consideration and revision or approval by the Council, the material with supporting commentary was put before successive meetings of the Institute in Tentative Drafts numbered 1 to 13 ....

Wechsler, "The Model Penal Code and the Codification of American Criminal Law" in *Crime, Criminology and Public Policy* 419, 421 (R. Hood ed. 1976).

The ALI's effort was widely accepted. It is said that "nearly forty states have recodified their criminal laws, using the Code as the lodestar." Singer, *Foreward, Symposium: The 25th Anniversary of the Model Penal Code,* 19 Rutgers L.J. 519 (1988).

More specifically, sec. 250.6 of the Model Penal Code underwent thorough analysis before it was approved in its final form by the ALI. In its comments to sec. 250.6, the ALI discusses the constitutional implications of loitering statutes from the United States Supreme Court opinion in *Papachristou, et al., v. City of Jacksonville,* 405 U.S. 156, 162 (1972) to numerous state court decisions concluding that, "[i]f even the Model

Code provision is unconstitutionally vague ... then it seems likely that no general provision against loitering can be drafted to survive constitutional review .... [T]here would be no provision to deal with the person who is obviously up to no good but whose precise intention cannot be ascertained." A.L.I. Model Penal Code sec. 250.6, Commentary (hereinafter MPCc) at 396-97. *State v. Ecker,* 311 So. 2d 104, 107 (Fla. 1975) noted that the Model Penal Code sec. 250.6 was drawn in a manner to meet the defects and infirmities in earlier vagrancy laws.

Some courts have held statutes and ordinances based on this section of the Model Penal Code unconstitutional. *See Fields v. City of Omaha,* 810 F.2d 830 (8th Cir. 1987); (identification portion held unconstitutionally vague); *City of Portland v. White,* 9 Or. App. 239, 495 P.2d 778 (1972); *City of Bellevue v. Miller,* 85 Wash. 2d 539, 536 P.2d 603 (Wash. 1975). Others, including the Wisconsin Court of Appeals, have found them constitutional. *State v. Wilks,* 117 Wis. 2d 495, 345 N.W.2d 498 (Ct. App. 1984), *aff'd. on other grounds,* 121 Wis. 2d 93, 358 N.W.2d 273 (1984), *cert. denied* 471 U.S. 1067 (1985). Other courts that have ruled in a similar manner are: *State v. Ecker,* 311 So. 2d 104 (Fla. 1975); *cert. denied* 423 U.S. 1019 (1975); *Bell v. State,* 252 Ga. 267, 313 S.E.2d 678 (1984); In addition, this court has noted that in many cases where loitering ordinances were held invalid "the courts have suggested to the legislature that they accept a more palatable version of the loitering statute, such as sec. 250.6 of the Model Penal Code ...." *State v. Starks,* 51 Wis. 2d 256, 265, 186 N.W.2d 245 (1971). We find the reasoning of the courts who have approved the Model Penal Code to be more persuasive.

The constitutionality of an ordinance is a question of law which this court decides without deference to the lower court's reasoning. *Kmiec v. Town of Spider Lake,* 60 Wis. 2d 640, 645, 211 N.W.2d 471 (1973). "It is elementary that an ordinance is presumed to be constitutional and that the attacking party must establish its invalidity beyond a reasonable doubt." *J & N Corp. v. Green Bay,* 28 Wis. 2d 583, 585, 137 N.W.2d 53 (1965). "This court will not interfere with a municipality's exercise of police power unless it is clearly illegal." *Id.* Every presumption must be indulged to sustain an ordinance's constitutionality if at all possible. Where doubt exists as to the constitutionality, it must be resolved by finding the legislative enactment constitutional. *See Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 559, 426 N.W.2d (1988).

## I. VAGUENESS.

Nelson's counsel contends the ordinance is unconstitutionally vague:[9]

> A statute or ordinance is unconstitutionally vague if it fails to afford proper notice of the conduct it seeks to proscribe or if it encourages arbitrary and erratic arrests and convictions. The test to determine vagueness is whether the statute or ordinance is so obscure that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its applicability ... [it] must be sufficiently definite

[9]The court of appeals held that Nelson could not challenge the ordinance's constitutionality with regard to vagueness. Both parties concede however, that Nelson has standing to facially challenge the constitutionality of the ordinance pursuant to *City of Houston v. Hill,* 482 U.S. 451, 96 L. Ed 398 (1987). We agree and consequently decide the issue.

so that potential offenders who wish to abide by the law are able to discern when the region of proscribed conduct is neared and those who are charged either with enforcing or applying it are not relegated to creating their own standards of culpability instead of applying the standards prescribed in the law.

*Milwaukee v. Wilson,* 96 Wis. 2d 11, 16, 291, N.W.2d 452 (1980) (footnotes omitted).

In *Starks,* this court struck down a general vagrancy statute as vague and overbroad. *Starks,* 51 Wis. 2d at 265. The term "loitering" was held unconstitutionally vague unless it was limited as to scope, place, or purpose. *Id.* We conclude the Milwaukee city ordinance before us now has specifically met that objection.

One is not in violation of the ordinance by just "loitering." Rather, one must be loitering or prowling "in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." Certain factors are listed which may be considered in determining whether alarm is warranted: flight at the appearance of a police officer, failure to identify oneself, and attempts to conceal oneself or objects. Although flight and failure to answer an officer's question by itself may be a constitutionally protected activity, surrounding circumstances may lead such action to constitute probable cause that an offense has been committed. *See Kolender v. Lawson,* 461 U.S. 352, 366, n. 4 (1983) (Brennan, J., concurring).

Furthermore, the police must give the suspect the opportunity to "dispel any alarm which would otherwise be warranted" prior to an arrest if such circumstances are possible. If no such opportunity is given, there can be no conviction of the offense. Ultimately, it

is the trier of fact who decides if the suspect's explanation "would have dispelled any alarm," not the police officer.

■

"Impossible standards" of clarity are not required. *Kolender,* 461 U.S. at 361. "There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision." *Smith v. Goguen,* 415 U.S. 566, 581 (1974). We conclude that the ordinance here is constitutional in that it provides sufficient notice and guidelines to law enforcement officials, judges, and ordinary citizens by limiting the term "loiter" in scope, place, or purpose. A similar Milwaukee city ordinance prohibiting prostitution was upheld against a vagueness claim in *Milwaukee v. Wilson,* 96 Wis. 2d at 19.

Other courts that have examined similar codifications of the Model Penal Code section on loitering have held it constitutional. In *Bell v. State,* 313 S.E.2d 678 (1984), the Georgia Supreme Court approved an almost identical version of sec. 250.6 against attacks of vagueness. It found the statute in question passed the two necessary requirements for surviving a vagueness attack: "The statute, when read as a whole, passes constitutional muster in advising persons of ordinary intelligence of the conduct sought to be prohibited ... [and] the statute also defines the offense in terms which discourage arbitrary enforcement." *Id.* 313 S.E.2d at 681. The court reasoned that the "offense of loitering is committed only when the actor engages in conduct 'not usual for law abiding individuals' which creates 'a reasonable alarm or immediate concern for the safety of persons or property in the vicinity.'" *Id.* To an argument that "usual" is vague, the court responded that the phrase is made clear by the clause which provides

that conduct would have to alarm a reasonable person.
*Id.* It stated:

> Initially the investigating officer must determine
> whether the suspect's conduct poses a danger to
> persons or property. Section (b) offers guidelines to
> assist the officer in making this determination.
> However, these guidelines do not require the officer
> to make an arrest, even if one or more of the
> situations suggested therein is present. If, drawing
> on all his professional experience, the officer con-
> cludes the suspect presents a danger to persons or
> property in the vicinity and arrests him for loitering
> or prowling, it is then a matter for the trier of fact to
> determine whether, under all the circumstances
> revealed by the evidence, the suspect's conduct gave
> rise to reasonable alarm for the safety of persons or
> property. In resolving this issue the jury may also
> consider the guidelines of Section (b). The statutes
> does not require a conviction if one or more of the
> listed circumstances is found. We point out that
> while there are useful guidelines, they do not
> represent an exhaustive list of factors which may be
> used in assessing whether the suspect's conduct
> reasonably warrants alarm. We also point out that
> under Section (b), no violation occurs if the investi-
> gating officer fails to afford the suspect an opportu-
> nity to dispel otherwise reasonable alarm by ex-
> plaining his conduct.

*Id.*

In *Ecker,* 311 So. 2d 104 (1975), the Florida
Supreme Court upheld a state statute identical to sec.
250.6 against an attack for vagueness. After analyzing
cases where similar loitering statutes were upheld and
dissimilar statutes were struck down, the Florida court
said as to the similar constitutionally valid statutes,
"there is an important common thread in each of the

aforementioned cases. In each instance either the peace and order were threatened or the public safety was involved." *Id.* 311 So. 2d at 109. It concluded that the words "under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity mean those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized." *Id.* In reconciling *City of Portland v. White,* 9 Ore. App. 239, 495 P.2d 778 (1972), the Florida court stated the Oregon court "failed to apply the judicial principle of construing the wishes of the legislative body in a manner that would make the legislation constitutionally permissible." *Ecker,* 311 So. 2d at 109. Importantly, the Florida court showed that the officer's discretion can be controlled when it applied the statute to specific cases it was considering in the consolidated appeal. As to one defendant who was hiding among the bushes at a private dwelling at 1:20 a.m., the court found such facts "would cause a reasonable person to be concerned for his safety or the safety of property in the vicinity." *Id.* at 110. Another defendant was observed in front of an apartment building. When asked for identification he replied he had none. The court found the evidence insufficient to be a threat to the public safety so the charge of loitering could not be upheld. *Id.* at 111. The court stated that, "while the statute may be unconstitutionally applied in certain situations, this is no ground for finding the statute itself unconstitutional." *Id.* at 110.

We conclude the ordinance is not unconstitutional on grounds of vagueness.

## II.  OVERBREADTH.

The loitering ordinance is also challenged on overbreadth grounds. "A statute or ordinance is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to conduct which the state is not permitted to regulate." *Wilson,* 96 Wis. 2d at 19. An ordinance which is overbroad is one which burdens or punishes activities which are constitutionally protected. *See State v. Princess Cinema of Milwaukee,* 96 Wis. 2d 646, 655, 292 N.W.2d 807 (1980). Overbreadth in an ordinance must be real and substantial when it is judged relative to the ordinance's "plainly legitimate sweep." *Id.* 96 Wis. 2d at 656 (citing *Ward v. Illinois,* 451 U.S. 767 (1977)).

The vagrancy statute held overbroad in *Starks,* 51 Wis. 2d 256, is a far cry from the ordinance at issue here. This court criticized the *Starks* statute because it could sweep up anyone "near any structure, vehicle or private grounds." *Id.* 51 Wis. 2d at 264. No unlawful activity was required to be found by the *Starks* statute. *Id.* Furthermore, the statute in *Starks* required the subject to give his account for being there to no particular person. *Id.* On the other hand, the ordinance here requires an officer to determine if the person is in a place, at a time and conducting himself in a manner not usual for law-abiding people under circumstances that warrant alarm to the officer. The ordinance also requires the officer to question the suspect allowing him to dispel any alarm caused to the officer.

Determining that an ordinance or a statute, as applied to a particular defendant, is not overbroad does not end an overbreadth analysis. In order to assert a

claim of constitutional overbreadth, it is not necessary that the defendant's own conduct be constitutionally protected. *Wilson*, 96 Wis. 2d at 19. In "an overbreadth challenge [a defendant] may hypothesize situations in which a statute or ordinance would unconstitutionally intrude upon the first amendment rights of third parties." *Milwaukee v. K.F.*, 145 Wis. 2d 29, 40, 426 N.W.2d 329 (1988) (citing *State v. Tronca*, 84 Wis. 2d 68, 89, 267 N.W.2d 216 (1978)). Nelson has made a similar argument here suggesting that a person could be subject to a loitering offense while taking a stroll, sitting on a park bench, seeking shelter from the elements in a doorway, or as a candidate shaking hands while campaigning. However, this court has said, "[I]n analyzing the constitutionality of potential applications of a regulation, the court will not deem a statute or ordinance invalid because in some conceivable, but limited circumstances the regulation might be improperly applied." *Milwaukee v. K.F.*, 145 Wis. 2d at 40. This court has quoted the United States Seventh Circuit Court of Appeals with approval stating, "[T]he overbreadth doctrine is 'strong medicine' and ... the overbreadth of a statute 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Tronca*, 84 Wis. 2d at 90 (quoting *Herzbrun v. Milwaukee County*, 504 F.2d 1189, 1195 (7th Cir. 1974)).

We find it highly unlikely that someone taking a stroll, sitting on a park bench, seeking shelter in a doorway from the elements, or shaking hands while politically campaigning, would be doing so in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm to police officers for the safety of persons or property

within the vicinity. On an overbreadth challenge this court found untenable an argument in the *Milwaukee v. K.F.* case that the Milwaukee "Loitering of Minors" ordinance, sec. 106–23, Milwaukee Code of Ordinances, would impermissibly apply to a minor walking home from work, or standing while waiting for a bus after the curfew hour. This court held that the curfew ordinance "is to prevent the undirected or aimless conduct of minors during the curfew hours." *Milwaukee v. K.F.,* 145 Wis. 2d at 48. Here too, the ordinance is not aimed at constitutionally protected conduct but at conduct which causes alarm for the safety of persons or property. This court further said in *Milwaukee v. K.F.,* that "while it is conceivable that a police officer could mistakenly or even willfully apply the ordinance [to someone not within its proscription] the potential of such improper application of the ordinance does not destroy its constitutionality." *Id.* And in *Wilson* this court held that a person engaged in political campaigning would not be swept up by the ordinance because that ordinance, the Milwaukee Prostitution Ordinance sec. 106–31(1)(9), Milwaukee Code of Ordinances, requires a showing of specific intent to accomplish the unlawful purpose manifested. *Wilson,* 96 Wis. 2d at 20–21. The ordinance in question here, while not containing an element of intent, does allow the officer to differentiate between conduct which is constitutionally protected from that which is not. The unprotected conduct is that which occurs in a place, at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Further, if the officer is by chance mistaken, the ordinance allows the suspect to dispel alarm when questioned.

The Florida Supreme Court in *Ecker* concluded that its statute, which is also patterned after sec. 250.6 of the Model Penal Code, was not overbroad. *Ecker,* 311 So. 2d at 109. The court reasoned that the cases upholding loitering ordinances contained a common thread; peace and order were threatened or public safety was involved. *Id.* The Florida court found the Model Penal Code's language, "those circumstances that warrant alarm for the safety of persons or property in the vicinity" to mean those circumstances where the safety of persons or property is jeopardized or where the peace and order is threatened. *Id.*

We conclude the ordinance is not unconstitutionally overbroad.

## III.  UNREASONABLE SEIZURE.

■Nelson makes several arguments that the ordinance and sec. 800.02(6), Stats., violate both art. I, sec. 11, of the state constitution and the federal Constitution's fourth amendment protection against unreasonable seizures. The standards and principles surrounding the fourth amendment are also generally applicable to art. I, sec. 11, of the Wisconsin Constitution. *State v. Paszek,* 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971). "[A] finding of probable cause under federal standards will normally result in a finding of probable cause under state standards." *Id.*

First, Nelson contends the ordinance is unconstitutional because there is no statutory criminal counterpart to require probable cause to believe that a *crime* has been committed for a warrantless arrest. Section 800.02(6), Stats., specifically authorizes arrests for

violations of municipal ordinances. Section 800.02(6) provides:

**800.02 Form of citation, complaint, summons and warrant in municipal ordinance violation cases .... (6)** Authority to arrest without a warrant. A person may be arrested without a warrant for the violation of a municipal ordinance if the arresting officer has reasonable grounds to believe that the person is violating or has violated the ordinance.

Because a violation of a municipal ordinance is not a crime, *State v. Kramsvogel,* 124 Wis. 2d 101, 116, 369 N.W.2d 145 (1985) *cert. denied,* 474 U.S. 901 (1985), counsel for Nelson argues that arresting for a municipal ordinance violation without a criminal statutory counterpart does not meet the constitutional probable cause requirement. A "reasonable grounds" for arrest has been equated to mean "probable cause." *Johnson v. State,* 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977). We therefore hold that the reasonable grounds standard as stated in sec. 800.02(6), Stats., is also synonymous with the constitutional standard of probable cause. *See also Wilks,* 117 Wis. 2d at 507.

Whether an arrest is "constitutionally valid depends ... upon whether, at the moment the arrest is made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an *offense." Beck v. Ohio,* 379 U.S. 89, 91 (1964) (citations omitted) (emphasis added). *See also, Michigan v. DeFillippo,* 443 U.S. 31 (1979); *Carroll v. United States,* 267 U.S. 132, 162

(1925); *State v. Drogsvold,* 104 Wis. 2d 247, 254, 311 N.W.2d 243 (Ct. App. 1981) (citing *Beck*).

"As a matter of constitutional law, ... any person lawfully arrested for the pettiest misdemeanor may be temporarily placed in custody." *Robbins v. California,* 453 U.S. 420, 450 (1980) (Stevens, J., dissenting) (footnote omitted). The question of whether there are constitutional limits on arrests for relatively minor offenses has not yet been answered by the United States Supreme Court. *Id.* at n. 11.

In *Fisher v. Washington Metro. Area Transit Authority,* 690 F.2d 1133 (4th Cir. 1982), this very question of the constitutionality of an arrest for a minor offense was considered. The defendant there challenged an arrest for an ordinance violation of eating on a train. Responding to her argument that an arrest for an offense that was only punishable by a fine was unconstitutional, the court after noting the United States Supreme Court had not decided the issue, stated:

> Until such an interpretation of the reasonableness requirement of the fourth amendment is adopted by the [United States Supreme] Court, we must assume that it applies alike to all criminal offenses— without regard to severity or permitted punishment—to allow reasonable custodial arrests as the traditional means for invoking the criminal process.

*Fisher,* 690 F.2d at 1139 n. 6.

We agree with the *Fisher* court that until otherwise held by the United States Supreme Court, a custodial arrest for offenses whose penalties are only civil forfeitures is not *per se* unconstitutional. *See also Gladden v. Roach,* 864 F.2d 1196 (5th Cir. 1989) (probable cause requirement fulfilled for an arrest pursuant to a disor-

derly conduct ordinance for which a period of incarceration was not provided); *McKinney v. George,* 726 F.2d 1183 (7th Cir. 1984) (arrest for disorderly conduct ordinance violation fulfilled probable cause requirement).

Furthermore, in *DeFillippo,* the United States Supreme Court reviewed an arrest made for a violation of a Detroit city ordinance which was a misdemeanor offense. Although not specifically deciding whether such an arrest violates the fourth amendment, the Court stated "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *DeFillippo,* 443 U.S. at 36.[10]

In general, "statutes expressly authorize police officers to arrest without process for offenses against the laws of the municipality, committed in their presence." 16A E. McQuillin, *The Law of Municipal Corporations,* sec. 45.18, 122 (3rd Ed. 1984). In situations where ordinance violations are less than misdemeanor offenses, "an officer may arrest without a warrant for such violations committed in his or her presence if authorized to do so by statute ...." 9 *Id.* sec. 27.11, 294. *See also* E. Fisher, *Laws of Arrest,* 162 (1973 ed.). As noted above, sec. 800.02(6), Stats., authorizes arrests for ordinance violations. *See also Mustfov v. Rice,* 663 F. Supp. 1255, 1269 (D. Ill. 1987) ("[U]nder Illinois law a police officer is authorized to arrest those

[10]We note that if it is held the police officers' arrest of Nelson for violating the ordinance is valid, under *DeFillippo,* Nelson's gun might not be suppressed even if we declared the ordinance unconstitutional. *DeFillippo,* 443 U.S. at 36. "The subsequently determined invalidity of the ... ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search of [the suspect] should not have been suppressed." *Id.* at 40.

found violating municipal ordinances that provide for only a fine and no incarceration time ...").

We also note that it has long been established in Wisconsin that a law enforcement officer may make a warrantless arrest of a person if the officer has "probable cause to believe the person was committing ... an ordinance violation." *State v. Welsh,* 108 Wis. 2d 319, 343, 321 N.W.2d 245 (1982) (Abrahamson, J., dissenting), *rev'd. on other grounds,* 466 U.S. 740 (1984). An officer, however, may make a warrantless arrest only if the ordinance violation was "committed in the officer's presence unless other factors" existed. *Id.*

Thirdly, Nelson argues that even if an arrest for an ordinance violation is constitutional, sec. 800.02(6), Stats., violates due process by failing to provide statutory or administrative guidelines to govern law enforcement officials as to when to arrest or issue a written citation. We conclude the statute only authorizes arrests pursuant to ordinance violations and does not establish guidelines for when to make an arrest. One must look to the ordinance allegedly violated for any "guidelines" in governing enforcement procedures. The ordinance in this case does establish certain minimal requirements for arrest which we find to be constitutionally reasonable.

By the very terms of the ordinance, a violation occurs "under circumstances that warrant alarm for the safety of persons or property in the vicinity." Where such situations occur, it is not unreasonable to believe arrest might be warranted. *See Cassidy v. Ceci,* 320 F. Supp. 223, 226 (1970) (statute is reasonably clear where the officer's authorization to arrest is based on whether it is reasonable to believe there might be possible injury arising out of its violation). In addition, the officer must

"afford the actor an opportunity to dispel any alarm," and if the officer does not, the actor cannot be convicted of violating the ordinance. If an explanation is given, the trier of fact ultimately decides if it is reasonable under the circumstances. There is sufficient protection provided by this opportunity to explain oneself to avoid arbitrary arrest.

Nelson points to sec. 968.085(2), Stats.[11] as possible guidelines to adopt when a law officer is considering whether to arrest for ordinance violations. These guidelines do provide assistance to a law officer in deciding when to arrest or issue a citation for a misdemeanor violation. We note, however, that even under sec. 968.085, "[t]he decision to issue or not issue a citation and the various factors considered by the law enforcement officer in making the decision are discretionary with the officer." *Note,* 1983 Wis. Act. 433, sec. 2.

[11]**968.085 Citation; nature; Issuance; release of accused** .... **(2) Authority to issue; effect.** A law enforcement officer may issue a citation to any person whom he or she has reasonable grounds to believe has committed a misdemeanor. A citation may be issued in the field or at the headquarters or precinct station of the officer instead of or subsequent to a lawful arrest. If a citation is issued, the person cited shall be released on his or her own recognizance. In determining whether to issue a citation, the law enforcement officer may consider whether:

(a) The accused has given proper identification.

(b) The accused is willing to sign the citation.

(c) The accused appears to represent a danger of harm to himself or herself, another person or property.

(d) The accused can show sufficient evidence of ties to the community.

(e) The accused has previously failed to appear or failed to respond to a citation.

(f) Arrest or further detention appears necessary to carry out legitimate investigative action in accordance with law enforcement agency policies.

Fourthly, Nelson claims that the ordinance is without a probable cause requirement before an arrest can be made. However, Nelson has cited no authority which holds that sec. 250.6 of the Model Penal Code, after which the Milwaukee ordinance is patterned, lacks a probable cause standard. The only case cited by Nelson which has addressed this specific issue is *Wilks*, 117 Wis. 2d at 495. *Wilks* considered probable cause challenges to the Milwaukee ordinance in question, 106–31(1)(a) and the authorizing statute, 800.02(6). The court in *Wilks* concluded that 800.02(6), which allows an officer to arrest without a warrant for an ordinance violation if the officer has "reasonable grounds to believe that the person is violating or has violated the ordinance," contains a probable cause requirement. *Id.* at 501. This court has previously equated the term "reasonable grounds" as synonymous with "probable cause" in considering a criminal arrest statute, sec. 968.07(1)(d). *Johnson v. State,* 75 Wis. 2d at 348. We also hold that sec. 800.02(6) "reasonable grounds" language is equivalent to a probable cause requirement.

As the defendant did in *Wilks*, Nelson attacks the ordinance, claiming it does not contain a probable cause requirement. The *Wilks* court concluded the ordinance did contain a probable cause standard because "the officers need more than just mere circumstances that warrant alarm" to make an arrest. *Wilks*, 117 Wis. 2d at 507. The ordinance also requires the individual to be loitering or prowling in a place, at a time, or in a manner not usual for law abiding individuals. *Id.* The *Wilks* court also noted that, as a further safeguard to assuring probable cause, the ordinance allows the individual to dispel any alarm by explaining his or her conduct. *Id.*

We agree with the interpretation made by the *Wilks* court. The drafters of the Model Penal Code were aware of the potential probable cause problems the earlier version of its loitering section might cause. The drafters, however, reviewed the section and developed the version used by the City. In so doing they stated, "this change was thought desirable in order to save the section from attack and possible invalidation as a subterfuge for authorizing arrest without probable cause." MPCc at 390. A New York court has agreed with this assertion. *People v. Berck,* 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 415 (1973) *cert. denied,* 414 U.S. 1093 (1973).

We conclude the ordinance and sec. 800.02(6), Stats., do not violate art. I, sec. 11 of the Wisconsin Constitution or the fourth amendment of the United States Constitution.

## IV. HOME RULE.

Finally, Nelson contends that by allowing arrest for "suspicious conduct," the ordinance represents a broadening of police authority beyond the constitutional and statutory parameters with which the City is granted.

Nelson contends that, because the City has passed an ordinance extending police authority to arrest beyond the constitutional and statutory requirements of probable cause, the City has exceeded its municipal powers. "Municipalities in Wisconsin have no inherent powers. They are authorized, however, to regulate local

affairs by art. XI, sec. 3[12] of the Wisconsin Constitution and by sec. 62.11(5),[13] Stats." *City of Madison v. Schultz,* 98 Wis. 2d 188, 195, 295 N.W.2d 798 (Ct. App. 1980) (citation omitted). Since we have decided that both the ordinance and sec. 800.02(6), Stats., require probable cause before an arrest is made, the City has not exceeded those powers granted to it by art. XI, sec. 3 of the Wisconsin Constitution and sec. 62.11(5). The Milwaukee Loitering and Prowling Ordinance does not allow arrest on anything less than the constitutional and statutory requirements of probable cause to believe that the ordinance has been violated.

Loitering, by its very nature requires a "proactive" response by the police rather than "reactive." Proactive responses are those which prevent crime before it happens. *People v. Nowak,* 363 N.Y.S.2d 142, 145, 46 A.D.2d 469 (1975). Many actively involved in law

[12] **ARTICLE XI.** Corporations. **Corporations; how formed** .... (3) **Municipal home rule; debt limit; tax to pay debt.** Section 3. **(1)** Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

[13] **62.11 Common Council** .... **(5)** Powers. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city, property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

enforcement believe it is time to resort to a proactive approach to crime. The police chief of San Diego is quoted as stating; "police can no longer 'rely solely on reactive approaches to crime control, police administrators must help develop proactive approaches for utilizing the field officer in the fight against street crime.'" F. Remington, D. Newman, E. Kimball, H. Goldstein and W. Dickey, *Criminal Justice Administration,* 44 (1982). The Florida Supreme Court recognized the need for statutes like sec. 250.6; "the whole purpose of the statute is to provide law enforcement with a suitable tool to *prevent* crime ...." *Ecker,* 311 So. 2d at 110 (emphasis added). A do nothing response to loitering is looked upon unfavorably by the public. The ALI comments state a no response attitude toward loitering "would lead to a significant loss in effective law enforcement and would encounter justifiably serious political resistance." MPCc, at 390.

In conclusion we hold that Milwaukee City Ordinance No. 106–31(1)(a), is not unconstitutionally vague or overbroad. We also hold that the ordinance does not violate the state and federal constitutional protections against unreasonable seizures. We further conclude that by enacting the ordinance, the City of Milwaukee has not exceeded the power granted to it. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

DAY, J. (concurring).

Government furnishes us with very little police "protection." What we have mainly is police "reporting" of crime and investigation after the crime is committed and then hopefully apprehension of the criminal.

I write this concurrence to respond to what I believe to be the unwarranted concerns expressed in the dissent.

Our rising crime rates and fear in which our citizens live is testimony to the fact that we desperately need police protection from those bent on causing us harm. The United States Department of Justice, in its survey of public opinion about crime in Milwaukee, concluded, "a majority [81%] of Milwaukee residents were of the opinion that crime in the United States was on the increase, that the problem of crime was as serious as portrayed by the news media, if not more so, and that their own chances of being criminally victimized had risen. Most also believed that people in general had curtailed their activities because of fear of crime." United States National Criminal Justice Information and Statistics Service, Pub. No. 50–NCS–C 25, *Milwaukee: Public Attitudes about Crime,* 3 (Dec. 1978).

One of the few tools that government has tried to furnish to the police for protection of the public is this very type of law, the loitering and prowling ordinance enacted by the City of Milwaukee.

The dissent's opening sentence says, "[P]revention of crime is obviously preferable to apprehension and punishment of criminals after the commission of an offense."

The dissent then takes a position, however, that would thwart such a goal by arguing that the Milwaukee Loitering Ordinance is unconstitutional.

While the majority opinion cites those court decisions that have upheld the anti-loitering provisions of the Model Penal Code the dissent relies on the rationale of those courts that would strike down such an ordinance.

The dissent relies on *Kolender v. Lawson,* 461 U.S. 352 (1983), a case where the law being challenged is unlike the Milwaukee ordinance. *Kolender* involved a California criminal statute which "requires persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer. ..." *Id.* 461 U.S. at 353. A failure to provide such "credible and reliable" information constituted grounds for arrest. *Id.* 461 U.S. at 357. The Court in *Kolender* held that there was "no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." *Id.* 461 U.S. at 358. Thus, this "identification" requirement was found to be completely within the peace officers' discretion and the statute was held unconstitutional. *Id.* 461 U.S. at 361.

In the Milwaukee Loitering Ordinance, however, it is conduct, not a failure to answer a peace officer's inquiry that raises the possibility of arrest. The suspect is merely provided an opportunity to explain his behavior and the alarm warranted by it before an arrest may be made. The Court in *Kolender* only addressed the vagueness of the identification portion of the California statute. The Milwaukee Ordinance has no such identification requirement.

The dissent in such reliance quotes from *Kolender* the words, "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." (Dissent, page 472.) The inference is that unscrupulous police might harass persons for reasons other than the legitimate concerns embodied in this ordinance. Any law or ordinance may be subject to abuse. But we have other laws designed to curb and punish such abuses as the many civil rights

suits amply demonstrate. What is closer to reality than the possibility of police harassment is the number of victims that could result because the police would not be allowed to intervene and thwart the loiterer and prowler lying in wait looking for his next victim if the dissent's position were to prevail. Whose "rights" would be protected under the dissent's rationale? Certainly not the average law abiding citizen's right to be secure in their person and property.

There is a growing and laudable concern for "victims rights." But the greatest right is the right *not* to be a victim in the first place. This ordinance is properly designed to thwart those who intend to victimize.

The Washington Supreme Court has stated, "[t]he importance of loitering ordinances cannot be minimized. They are necessary for the protection of society and for the preservation of the public peace." *Seattle v. Drew,* 70 Wash. 2d 405, 412, 423 P.2d 522, 526 (1967). See *also State v. Ecker,* 311 So. 2d 104 (Fla. 1975); Sherry, *Vagrants, Rogues and Vagabands—Old Concepts in Need of Revision,* 48 Cal. L. Rev. 557, 566 (1960). I agree. The *Seattle* court held the particular ordinance before it unconstitutional but then gave its approval to the language in Model Penal Code sec. 250.6. *Id.*

The drafters were keenly aware of the problems presented by the old loitering statutes. They stated, "the offense is not made out simply by the fact of loitering but requires circumstances such that the actor's behavior justifies alarm for the safety of persons or property." A.L.I. Model Penal Code sec. 250.6, Commentary at 391 (hereinafter MPCc). The drafters went further, "this formulation limits the offense to its essential law enforcement rationale of justifying inter-

vention to prevent incipient crime and avoids the extension of liability to persons who are simply socially undesirable." *Id.* This ordinance meets the *Milwaukee v. Wilson,* 96 Wis. 2d 11, 291 N.W.2d 452 (1980) requirements of being specific as to the scope, place *or* purpose. *Wilson* states, "we indicated quite clearly in *Starks* that it was the failure of the statute there at issue 'to meet the specificity requirements as to scope, place *or purpose'* which rendered it unconstitutionally vague." *Wilson,* 96 Wis. 2d at 18–19 (emphasis in original). In the face of arguments that the ordinance at issue in *Wilson* did not merit the "place" requirements, this court concluded that it did not have to meet all three, stating, "[h]aving limited its prohibition to loitering for a specific unlawful purpose, the city is not required to further limit its prohibition of that specific kind of loitering to only certain areas." *Id.* 96 Wis. 2d at 19. As the comments to sec. 250.6 point out, 250.6 is aimed at prohibiting loitering for a "specific unlawful purpose." The comments state:

> As a threshold matter, the section requires at least some manifestation of aberrant behavior. Specifically, the actor must loiter or prowl 'in a place, at a time, or in a manner not usual for law-abiding individuals.' The circumstances must be such that this behavior warrants 'alarm for the safety of persons or property in the vicinity.'

MPCc, at 390.

We suffer from an ever increasing amount of violent crime. Much is written about the societal need to prevent the commission of criminal acts. This ordinance is a step in the right direction.

I concur.

SHIRLEY S. ABRAHAMSON, J., (dissenting). Prevention of crime is obviously preferable to apprehension and punishment of criminals after the commission of an offense. I do not believe, however, that the loitering ordinance at issue in this case is a constitutional means of attaining the important goals of crime prevention and deterrence.

The majority opinion finds the reasoning of the courts upholding similar loitering laws persuasive. I do not. I agree with the reasoning of the courts who have found similar loitering laws unconstitutionally vague. Therefore I dissent.

The Milwaukee Loitering Ordinance is based, as the majority opinion explains, on sec. 250.6 of the 1962 Model Penal Code. The Reporters who drafted commentaries to sec. 250.6 in 1980 themselves expressed concerns about its constitutionality.[1] In a 1985 Explan-

---

[1] In any event, recent years have seen a dramatic upsurge in constitutional attacks on vagrancy and loitering statutes and in the success of those efforts ....

....

As a matter of constitutional policy, abrogation of loitering is arguably sound. There is irreducible indeterminancy in the definition of loitering, as there is necessarily discretion in the police to decide in the first instance what the 'public safety demands' or whether the circumstances 'justify suspicion' or 'warrant alarm' .... If even the Model Code provision is unconstitutionally vague, as the Oregon decision suggests, then it seems likely that no general provision against loitering can be drafted to survive constitutional review. Of course, narrower proscriptions of loitering with specific purpose—e.g., to solicit deviate sexual relations—may continue to be valid, but there would be no provision to deal with the person who is obviously up to no good but whose precise intention cannot be ascertained. Most courts are willing to consider in a void-for-vagueness analysis the need for some provision and the impossibility of achieving greater precision. This factor cuts strongly in favor of the constitutionality of the Model Code Provision. ALI, Model Penal Code and Commentaries, sec. 250.6, pp. 394, 396–97 (1980).

atory Note to Article 250 of the 1962 Model Penal Code (of which sec. 250.6 is a part), the Code Reporters cautioned that the constitutional background of the offenses in Article 250 (entitled Riot, Disorderly Conduct and Related Offenses) had changed significantly since promulgation of the Model Code in 1962 and that the courts had become more concerned about the vagueness of penal statutes.[2]

Vagueness is a due process issue under the fourteenth amendment to the United States Constitution. The courts use a two part analysis to test a statute challenged on the grounds of vagueness: First, the statute must define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited (notice requirement). Second, the statute must define the offense in a manner that does not encourage arbitrary and discriminatory enforcement (requirement of minimal guidelines to govern law enforcement). Those charged with enforcing or applying the law cannot be relegated to creating their own standards of culpability instead of applying the standards prescribed in the law. See *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976); *State v. Starks,* 52 Wis. 2d 256, 262-63, 186 N.W.2d 245 (1971); *Papachristou v. City of Jacksonville,* 405 U.S. 162, 168-70 (1972); *Kolender v. Lawson,* 461 U.S. 352, 357-58 (1983).

---

[2]The Reporters wrote in 1985 as follows:

... the constitutional background of these offenses has changed significantly since promulgation of the Model Code in 1962. In general, judicial concern with the vagueness of penal legislation has increased; and expanding concepts of liberties protected under the first amendment have withdrawn many areas of expressive activity from legislative competance. A.L.I., Model Penal Code: Official Draft and Explanatory Notes, p. 191 (1985).

I am persuaded, as other judges have been,[3] that the Model Penal Code's loitering provision and similar laws do not meet constitutional specificity requirements as to scope, place or purpose.

The ordinance makes a person who "loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity" culpable.

The word "loitering" connotes the act of hanging around without any apparent purpose. A law that prohibits loitering without further definition is unconstitutionally vague because it fails to distinguish between innocent conduct and conduct calculated to cause harm. Such a law fails to give adequate notice of what conduct is proscribed. See *State v. Starks, supra* 51 Wis. 2d at 263; *City of Portland v. White,* 495 P.2d 778, 779 (1972); *City of Seattle v. Drew,* 423 P.2d 522, 524 (Wash. 1967); *Papachristou v. Jackson,* 405 U.S. 156, 162 (1972); *People v. Bright,* 71 N.Y.2d 376, 520 N.E.2d 1355, 1359 (1988).

---

[3]*See, e.g., City of Portland v. White,* 495 P.2d 778 (Or. App. 1972); *City of Bellevue v. Miller,* 88 Wash. 2d 539, 536 P.2d 603 (Wash. 1975); *Fields v. City of Omaha,* 810 F.2d 830 (8th Cir. 1987); *People v. Berck,* 32 N.Y.2d 567, 300 N.E.2d 411 (1975); *People v. Bright,* 71 N.Y.2d 376, 520 N.E.2d 1355 (1988).

For further discussion of the void for vagueness doctrine and loitering laws, *see, e.g.,* Amsterdam, *Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers and the Like,* 3 Criminal Law Bulletin 205, 216–224 (1967); Note, *Stop-and-Identify Statutes After Kolender v. Lawson: Exploring the Fourth and Fifth Amendment Issues,* 69 Iowa L. Rev. 1057 (1984); Note, *Kolender v. Lawson: Fourth and Inches on Fourth Amendment Issues and Supreme Court Punts,* 10 J. Contemp. Law 239 (1984).

The phrases in the ordinance which attempt to narrow the scope of loitering to conduct which is in a manner not usual for law-abiding individuals and under circumstances that warrant alarm do not cure the vagueness defect. They provide neither the actor nor the law enforcement officer with criteria by which to determine what is an unusual place, time or manner for a law abiding citizen to be out in public or, with the exception of flight, refusal to identify oneself and concealment, what circumstances warrant alarm. This loitering ordinance, unlike the ordinance upheld in *Milwaukee v. Wilson,* 96 Wis. 2d 11, 291 N.W.2d 452 (1980), does not require a specific intent to commit a crime.

Nor do the identification and explanation provisions of the ordinance cure the vagueness defect. There is no indication in the ordinance of the nature of the identification or explanation that might be adequate to dispel an officer's alarm.

In this case the defendant's response to the officer's question of what he was doing was "nothing." The very essence of loitering is "doing nothing." "Doing nothing" may be very suspicious conduct and "nothing" is hardly an explanation of one's conduct. But clearly the ordinance cannot constitutionally make a person culpable for doing nothing.

Courts have concluded that similar identification and explanation requirements in loitering laws are void for vagueness because they do not provide a standard for law enforcement officers to determine what a suspect has to do in order to satisfy the requirement. *See, e.g., Kolender v. Lawson, supra,* 461 U.S. at 358; *People v. Berck,* 32 N.Y.2d 567, 300 N.E.2d 411, 414 (1973); *People v. Bright, supra,* 520 N.E.2d at 1360.

In *Kolender,* the challenged statute required a person suspected of loitering to furnish "credible and reliable identification" upon a police officer's demand. Justice O'Connor, writing for the majority of the United States Supreme Court, concluded that although the San Diego police chief offered examples of what might be "credible and reliable identification," the statutory requirement was nonetheless dependent on police discretion, giving law enforcement personnel "a virtually unrestrained power to arrest and charge persons with a violation." *Kolender, supra,* 461 U.S. at 360. The Court concluded that, because the standard was subjective, the law "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" *Id.,* quoting *Papachristou, supra* 405 U.S. at 170.

The Milwaukee ordinance gives the suspect, upon being stopped, the opportunity to dispel any alarm, and thus avoid arrest. Like the statute in *Kolender,* the Milwaukee ordinance leaves the definition of this "opportunity" entirely up to the individual judgment of the police officer making the stop. It is the police officer who determines, without significant guidance from the ordinance, what circumstances cause "alarm," and it is the police officer who decides, again without significant guidance from the ordinance, whether the suspect has adequately dispelled that alarm by identifying himself or herself and explaining his or her presence and conduct. The ordinance leaves all of the critical definitions up to the discretion of law enforcement and so, under *Kolender,* it violates the federal Constitution.[4]

---

[4]The suggestion that a person could be arrested merely because he or she refuses to supply identification or an explanation also

The majority observes that "[u]ltimately, it is the trier of fact who decides if the suspect's explanation 'would have dispelled any alarm,' not the police officer." At 447–448. It is important, however, to recognize that availability of a trial after arrest in no sense obviates the constitutional requirement that laws include minimal guidelines to govern law enforcement officials. Justice O'Connor put it this way in *Kolender:*

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government. *Kolender, supra,* 461 U.S. at 358, n. 7, quoting *United States v. Reese,* 92 U.S. 214, 221 (1876).

The majority concludes that the Milwaukee loitering ordinance meets the objections this court articulated in *Starks.* At 447. I conclude that the loitering ordinance, like the statute struck down in *Sparks,* does not meet the standards the United States Supreme Court has established. Accordingly I dissent.

I am authorized to state that Chief Justice Nathan S. Heffernan joins in this dissent.

---

raises significant fifth amendment questions which are only summarily addressed by the majority opinion. *See, e.g. Kolender, supra,* 461 U.S. at 360, n. 9; A.L.I. Model Penal Code and Commentaries, sec. 250.6, pp. 397–98 (1980).