SHEPHERD LEGAN ALDRIAN LTD., Plaintiff-Appellant,

v.

VILLAGE OF SHOREWOOD, Defendant-Respondent.†

Court of Appeals

*No. 93–0840. Submitted on briefs January 4, 1994.—Decided February 22, 1994.*

(Also reported in 513 N.W.2d 686.)

†Petition to review dismissed-untimely.

For the plaintiff-appellant the cause was submitted on the briefs of *Duffey Law Office, S.C.*, with *Joseph P. Duffey*, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Godfrey, Braun & Hayes*, with *Hugh R. Braun* and *M. Susan Maloney*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Shepherd Legan Aldrian Ltd. (Shepherd), an architectural firm, appeals from a summary judgment dismissing its action against the Village of Shorewood to recover architectural fees for plans and specifications prepared for Park Lane Associates (Park Lane), the former owner of a 2.8-acre tract of unimproved land in Shorewood, upon which Park Lane had proposed to construct a 142-unit congregate housing facility for senior citizens. Shorewood commenced a condemnation action against Park Lane and acquired the property before Park Lane paid anything to Shepherd under its contract. Park Lane filed a claim against Shorewood under § 32.20, STATS., for fees owed to Shepherd, and then assigned its claim to Shepherd. When Shorewood denied the claim, Shepherd sued

Shorewood under the assignment from Legan for its fees, interest and costs.

The trial court granted Shorewood's motion for summary judgment, dismissing the complaint because Park Lane had not paid anything to Shepherd under its contract. Because Park Lane had not paid the amount sought from Shorewood, the trial court concluded that Park Lane was not entitled to *reimbursement* under § 32.195(5),STATS.[1] We conclude that § 32.195(5), STATS., requires "reimbursement" for reasonable and necessary expenses incurred for plans and specifications designed for the property which are of no value elsewhere, even if those expenses have not yet been paid. Accordingly, we reverse.

The contract between Shepherd and Park Lane was a "Standard Form of Agreement Between Owner and Architect for Housing Services" (the AIA contract). It provided for four phases, the first two of which are relevant here. The design phase involved the preparation of drawings and appropriate documents for the project for the owner's approval; the construction documents phase consisted of preparation of detailed drawings and specifications for construction of the project based upon the approved design documents. The contract provided for a fixed fee of 4.15% of total construction costs, of which thirty-five percent was allocated to the design phase, and forty percent to the

---

[1] Section 32.195(5), STATS. provides:

**Expenses incidental to transfer of property.** In addition to amounts otherwise authorized by this subchapter, the condemnor shall reimburse the owner of real property acquired for a project for all reasonable and necessary expenses incurred for:

. . . .

(5) Expenses incurred for plans and specifications specifically designed for the property taken and which are of no value elsewhere because of the taking.

construction documents phase. The summary judgment affidavit of John Barron Shepherd, a licensed architect and president of Shepherd, averred without contradiction that within a year it completed its design responsibilities under the contract and had completed the construction documents in a form appropriate for filing and approval of necessary authorities. In the three years following, it performed substantial services consisting of modifications of the plans, preliminary bidding, and cost estimating. Shorewood's approval of the project for Park Lane, filed two months prior to the AIA contract, contained no time limit for its completion.

Shorewood rescinded its approval more than five years after it initially approved the project.[2] Shorewood acquired the land from Park Lane through condemnation proceedings and paid Park Lane $655,000 for the value of the property. Shepherd, however, was not paid for the architectural services which it provided according to the AIA contract. Shepherd seeks payment of these services from Shorewood pursuant to Park Lane's assignment of its claim against Shorewood. Section 32.195(5), STATS., provides for reimbursement of expenses incurred for plans and specifications made specifically for the condemned property. The issue on appeal is whether sub. (5) requires actual payment of the expense by the owner

[2] Shorewood approved the Park Lane project on October 15, 1984, and rescinded it on December 18, 1989. The Park Lane-Shepherd contract was entered into on December 17, 1984. Shorewood approved changes to the project on September 4, 1985. By December of 1985, Shepherd had completed the design and construction document phases and was entitled to payment of seventy-five percent of its fee. The amount of the fee is not contested.

476

before "reimbursement" can be made, or whether the mere liability for such expenses is sufficient.

The trial court granted summary judgment to Shorewood after deciding that § 32.195(5), STATS., prevented recovery. Section 802.08(2), STATS., regulates summary judgment proceedings and provides that the motion shall be granted upon the papers submitted if it appears that no material issue of fact exists and that the movant is entitled to judgment as a matter of law. The parties do not assert that material issues of fact exist with regard to this statutory issue. The resolution of this appeal depends upon whether the trial court correctly interpreted § 32.195(5), STATS.[3]

Statutory interpretation presents a question of law, which this court reviews de novo. *Pulsfus Poultry Farms v. Town of Leeds*, 149 Wis. 2d 797, 803-04, 440 N.W.2d 329, 332 (1989). Our first resort when interpreting a statute is to the language of the statute itself. *Id.* at 804, 440 N.W.2d at 332. If the statute is unambiguous, we look no further. *Id.* If, however, the statute is ambiguous, we may look to the scope, subject matter, and object of the statute in an attempt to determine legislative intent. *Id.* at 806, 440 N.W.2d at 333. A statute is ambiguous if reasonably well-informed persons could understand it in more than one way. *Id.* at 804, 440 N.W.2d at 332.

The trial court and Shorewood perceive no ambiguity in § 32.195(5), STATS. On appeal, Shorewood relies upon the trial court's definition of *reimburse*—"to pay

---

[3] We note that Shorewood's summary judgment motion raised grounds for summary judgment in addition to the issue on appeal. Those issues are not briefed on appeal, and thus, we do not address them. ·

back, to make restoration, to repay that expended; to indemnify or make whole." *See* BLACK'S LAW DICTIONARY 1287 (6th ed. 1990). From this definition, Shorewood concludes that Park Lane's failure to pay Shepherd bars its recovery under the plain language of the statute because Shorewood cannot pay *back* Park Lane for an amount which was never *paid* in the first place.

While Shorewood argues that one can only *reimburse* for moneys actually *paid*, Shepherd argues that *expenses incurred* include expenses not yet paid. We agree with Shepherd that an expense does not have to be paid to be incurred. To "incur" is "[t]o have liabilities cast upon one by act or operation of law." BLACK'S LAW DICTIONARY 768 (6th ed. 1990). We conclude that an ambiguity arises in § 32.195(5), STATS., due to the statute's arguably contradictory language with respect to "reimburse" and "expenses incurred." Thus, we must look further than the language of the statute itself to find its meaning.

Because the power of eminent domain is "extraordinary," courts strictly construe the condemnor's power, while liberally construing provisions that favor the owner, including statutes that regulate the compensation to be paid to the owner. *Standard Theaters, Inc. v. DOT*, 118 Wis. 2d 730, 742-43, 349 N.W.2d 661, 668-69 (1984). Furthermore, § 32.19(1), STATS., "Additional items payable," contains the following language indicative of legislative purpose:

> The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment of the property acquired and other losses hereinafter described and

478

suffered as the result of programs designed for the benefit of the public as a whole; . . .

The expenses that are currently found within § 32.195, STATS., were at one time contained within § 32.19. Thus, we find § 32.19's statement of legislative purpose to be persuasive and we consider § 32.195 in light of this legislature purpose.

Like the language of § 32.195(5), STATS., other subsections of the statute are similarly silent on whether actual payment is required before reimbursement can be made. Compensable expenses include, for example "recording fees, transfer taxes and similar *expenses*," sub. (1); "[p]enalty *costs*," sub. (2); "*cost* of realigning property," sub. (4); "[r]easonable net rental *losses*," sub. (6); and "*cost* of fencing," sub. (7). In contrast, § 32.195(3), STATS., provides for "reimbursement" of incurred expenses for real estate taxes "paid" by the owner for a period subsequent to vesting of title in the condemnor. Although we are not called on to determine whether taxes under sub. (3) must actually be paid to entitle the owner to reimbursement, the use of the word "paid" in that subsection reveals, at the very least, a lack of legislative concern for the distinction between an *incurred* expense, as that term is used in the prefatory clause of the statute, and a *paid* expense, as that term is used in sub. (3). At most, the presence of the word "paid" in sub. (3), but not in sub. (5), would indicate that the legislature intended that, unlike the requirements of sub. (3), the owner's mere liability for expenses under sub. (5) is sufficient to entitle the owner to compensation.

■

Given this legislative purpose of fairly compensating the owner, the liberal interpretation to be given to statutes favoring the owner, and the legislature's

imprecise usage of the term "reimburse," we conclude that the legislature did not intend to limit the owner's compensation under § 32.195(5), STATS., to those expenses that were actually paid. Rather, the legislature intended to require condemnors to fairly compensate owners who have become *liable* for reasonable and necessary expenses incurred for "plans and specifications specifically designed for the property . . . which are of no value elsewhere."

Shorewood concedes that the legislative history of § 32.195(5), STATS., casts no light upon the legislature's reason for using the word *reimbursement*, but argues that the legislature probably intended to require actual payment of the expense to prevent complicity between the owner and its vendor to bilk the condemnor. We note that these concerns can be adequately addressed under § 32.195's requirement that the incurred expenses be "reasonable and necessary."

For the foregoing reasons, we reverse the trial court's grant of summary judgment. We remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.