CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

Clifton HAMPTON, Defendant-Appellant.

Court of Appeals

*No. 95–1398. Submitted on briefs March 6, 1996.—Decided
July 31, 1996.*

(Also reported in 553 N.W.2d 855.)

For the defendant-appellant the cause was submitted on the briefs of *James A. Walrath* and *Hannah C. Dugan* of *Legal Aid Society of Milwaukee, Inc.*

For the plaintiff-respondent the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *M. Joseph Donald*, assistant city attorney, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J. Clifton Hampton appeals from a judgment of forfeiture for violating the City of Milwaukee's ordinance against carrying a concealed dangerous weapon. *See* MILWAUKEE CODE OF ORDINANCES 105-34. He argues that the ordinance violates his procedural due process and equal protection rights under the United States and Wisconsin Constitutions, and conflicts with Wisconsin law and public policy. We reject his arguments and affirm.

## I. BACKGROUND.

The parties stipulated to the following facts. City of Milwaukee police conducted a traffic stop of a car driven and owned by Hampton. The police found a folding lock-blade knife with a three-and-three-quarter-inch blade in the car's glove compartment. The glove compartment door was closed, but within Hampton's reach. Hampton told police that it was his knife and that he used it to cut boxes at work. Police found other tools in the car's trunk. The traffic stop occurred at 3:00 p.m., and Hampton stated that he had last worked at 6:00 a.m. on the day of the stop. Police cited Hampton for carrying a concealed weapon under 105-34 of the Milwaukee Code of Ordinances.

53

Ordinance 105-34, provides, in relevant part:

**Carrying Dangerous Weapons. 1.** PROHIB-ITED. a. It shall be unlawful for any person except a peace officer to go armed with a concealed and dangerous weapon within the city of Milwaukee.

. . . .
**2.** DEFINITIONS. For the purposes of this section:

a. "Dangerous Weapon" means any device designed as a weapon and capable of producing death or great bodily harm, . . . or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm. The following are dangerous per se: . . . any other knife having a blade 3 inches or longer. Instruments not herein specifically enumerated are none the less considered weapons when they fall within the terms of this definition.

Hampton contested the citation, but the City of Milwaukee Municipal Court found Hampton guilty of violating the ordinance and ordered him to forfeit $269 or spend ten days in jail. Hampton petitioned the Milwaukee County Circuit Court for a trial *de novo*, which the trial court granted. Hampton then filed a motion to dismiss, arguing that the "dangerous per se" language of the ordinance created an irrebuttable mandatory presumption, thereby violating the due process and equal protection provisions of the United States and Wisconsin Constitutions and conflicting with state law and public policy.

The trial court rejected Hampton's constitutional claims, found him guilty of violating the ordinance, and entered a forfeiture judgment for $269 or ten days in

jail. Hampton now renews his constitutional arguments on appeal.

## II. ANALYSIS.

Hampton claims that the ordinance is unconstitutional because it creates an irrebuttable mandatory presumption that a knife with a blade length of three inches or longer is a dangerous weapon, and that this presumption violates his rights to procedural due process and equal protection under the federal and state constitutions. He also claims that the ordinance conflicts with state statutes governing presumptions and state policy regarding the treatment of knives as dangerous weapons. We address each claim *seriatim*.

### A. *Standard of Review.*

Whether an ordinance is constitutional is a question of law that we review *de novo*. *City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 446, 439 N.W.2d 562, 566, *cert. denied,* 493 U.S. 858 (1989). Further, we begin with the presumption that an ordinance is constitutional and "must be upheld unless proven unconstitutional beyond a reasonable doubt." *See Libertarian Party of Wisconsin v. State,* 199 Wis. 2d 791, 802, 546 N.W.2d 424, 430 (1996). Indeed, we " 'will not interfere with a municipality's exercise of police power unless it is clearly illegal.' " *City of Milwaukee,* 149 Wis. 2d at 446, 439 N.W.2d at 566 (citation omitted). "Every presumption must be indulged to sustain an ordinance's constitutionality if at all possible. Where doubt exists as to the constitutionality, it must be resolved by finding the legislative enactment constitutional." *Id.*

### B. *Procedural Due Process.*

55

An ordinance violates procedural due process if it creates a conclusive presumption, in other words, an irrebuttable mandatory presumption, that shifts the burden of persuasion for an element of the ordinance onto the offender. *See Muller v. State,* 94 Wis. 2d 450, 473-77, 289 N.W.2d 570, 582-83 (1980). Hampton argues that the "dangerous per se" language in 105-34(2)(a) creates an irrebuttable mandatory presumption that any knife with a blade length of three inches or longer is a dangerous weapon under the ordinance. Hence, he argues that the City is relieved of its burden to show that his knife was a dangerous weapon. We disagree.

When an ordinance is challenged as unconstitutional on its face, reviewing courts "must make a logical and sensible construction in a reasonable sense." *See State v. Starks*, 51 Wis. 2d 256, 259, 186 N.W.2d 245, 246 (1971). Further, when an ordinance is susceptible to two meanings, it must be construed to avoid an unreasonable or unconstitutional result. *State v. S & S Meats, Inc.*, 92 Wis. 2d 64, 71, 284 N.W.2d 712, 715 (Ct. App. 1979). This court must interpret ordinances in a way that avoids absurd results. *See Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 679, 500 N.W.2d 649, 652 (1993).

We conclude that a reasonable interpretation of the ordinance exists that would sustain its constitutionality, and therefore, we must interpret the ordinance in such fashion. This requires a careful reading of the ordinance.

Offenders violate the ordinance only if they go armed with a concealed and dangerous weapon. *See* Ordinance 105-34(1). Subsection (2)(a) defines "dangerous weapon" as "any device designed as a weapon

and capable of producing death or great bodily harm . . . or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Thus, the ordinance defines "dangerous weapon" as one compound element that must be proven; the ordinance does not require proof of two independent elements. Nonetheless, in order to show that an item is a "dangerous weapon" under the ordinance, the item must be both dangerous *and* a weapon.

Subsection (2)(a) then defines as "dangerous per se" a list of items including "any other knife having a blade 3 inches or longer." The "dangerous per se" language lists objects that clearly are "capable of producing death or great bodily harm." In short, the ordinance states the obvious—all knives with a blade three inches or longer are "capable of producing death or great bodily harm"—the ordinance's definition of dangerous.

The ordinance, however, does not define the listed items as weapons per se. Hence, a "knife having a three inch blade or longer" is not by the ordinance's definition automatically a "dangerous weapon," even though it is by definition "dangerous." The City, in order to show that an offender carrying a three-inch bladed knife has violated 105-34, must still show that the knife is a weapon; that is, that it is either a "device designed as a weapon" or is "any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." If the City met this burden, the offender could rebut it by presenting evidence that the knife was not a weapon as defined by the ordinance.

For example, if a postal carrier were cited for violating 105-34 after police uncovered a concealed letter

opener with a four-inch blade in his or her mail bag, the individual could rebut the state's evidence that he or she was carrying a "dangerous weapon" by showing that it was not a weapon—that is, that it was neither designed as a weapon nor was it used or intended to be used in a manner calculated or likely to produce death or great bodily harm. The fact-finder would then have to weigh the evidence and determine whether the postal carrier had violated the ordinance.

■

It is clear that the ordinance did not violate Hampton's procedural due process rights. The ordinance's language did not relieve the City of proving that Hampton was carrying a concealed "dangerous weapon." Hampton was free to challenge the City's contention that the knife in his glove compartment was a "dangerous weapon." Although Hampton's knife was "capable of producing death or great bodily harm"—that is, dangerous—it was not necessarily a weapon. Once the City presented evidence that the knife was indeed a "weapon," Hampton could present his defense that the knife was not a weapon, but a tool for work.

### C. Equal Protection.

Hampton also claims the "dangerous per se" language of Ordinance 105-34 creates an arbitrary classification that denies him equal protection under the law. Hampton claims that when a person is cited for carrying a concealed knife with a blade less than three inches, the City must prove that the knife was dangerous; whereas, when a person is cited for carrying a knife with a blade three inches or longer, the City is relieved of this burden. He argues that this distinction creates an arbitrary and irrational classification

that violates Hampton's right to equal protection. We disagree.

Unless a challenge to an ordinance affects a person's fundamental right or creates a classification based on a suspect class, this court uses the "rational basis test" in determining whether the ordinance withstands the equal protection challenge. *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 886, 517 N.W.2d 135, 139 (1994). Hampton has made no argument that the ordinance violates a fundamental right or that it is based on a suspect classification—therefore, the "rational basis test" applies.

Under the "rational basis test," we must uphold a legislative classification if there exists any reasonable basis to justify that classification. To decide if there is any reasonable basis, the court is obligated to find or construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds legislative determinations. *K.C. v. DHSS*, 142 Wis. 2d 906, 916, 420 N.W.2d 37, 40 (1988).

Here, the Milwaukee Common Council could reasonably conclude that a knife with a three inch blade or longer is obviously dangerous—that is, "capable of producing death or great bodily harm"—whereas, a knife with a shorter blade is not necessarily dangerous. The classification is reasonable and does not violate Hampton's equal protection rights under the federal and state constitutions.

*D. State Statutes and State Policy.*

Hampton's last argument is that the "dangerous per se" language of the ordinance is in conflict with state law and state policy. We reject his argument.

■

Hampton claims the "dangerous per se" language in 105-34 conflicts with the state statute governing evidentiary presumptions. *See* RULE 903.01, STATS.[1] Hampton argues that RULE 903.01 governs proceedings in municipal courts in Wisconsin, *see* § 800.08(4), STATS. ("Municipal courts shall be bound by the rules of evidence specified in chs. 901 to 911."), and that it forbids irrebuttable mandatory presumptions. He then repeats his argument that the 105-34 "dangerous per se" language creates just such a presumption, and that this conflicts with RULE 903.01. We rejected his argument on this issue above, and therefore, we see no conflict with state law on this point. Further, RULE 903.01, STATS., does not even address irrebuttable mandatory presumptions.

Hampton also argues that the 105-34 "dangerous per se" language conflicts with the spirit of state law and general state policy "with regard to carrying . . . instruments or devices that may have multiple uses." He argues that this policy is evidenced by § 941.23, STATS., the state carrying a concealed weapon statute,

---

[1] RULE 903.01, STATS., provides:

**Presumptions in general.** Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

and its definition of "dangerous weapon" in § 939.22(10), STATS.[2] We disagree.

Under § 62.11(5), STATS., the Wisconsin Legislature gave the City of Milwaukee a general grant of power "to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public." Further, the City was allowed to "carry out its powers by license, regulation, suppression, [and] fine." We will uphold an ordinance adopted by the City unless it is in direct conflict with a statute on the same subject, is unreasonable, or is arbitrary. *Johnston v. City of Sheboygan*, 30 Wis. 2d 179, 184, 140 N.W.2d 247, 250 (1966). Plus, local ordinances may impose stricter standards than similar state regulation when the two do not conflict. *Konkel v. Town of Raymond*, 101 Wis. 2d 704, 709, 305 N.W.2d 190, 193 (Ct. App. 1981). Our review of the ordinance and the state statutes reveals no conflict between them. Further, as discussed above, the ordinance is neither

---

[2] Sections 941.23, and 939.22(10), STATS., provide:

**941.23 Carrying concealed weapon.** Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor.

**939.22 Words and phrases defined.** In chs. 939 to 948 and 951, the following words and phrases have the designated meanings unless the context of a specific section manifestly requires a different construction or the word or phrase is defined in s. 948.01 for purposes of ch. 948:

. . . .

**(10)** "Dangerous weapon" means any firearm, whether loaded or unloaded; any device designed as a weapon and capable of producing death or great bodily harm; any electric weapon, as defined in s. 941.295(4); or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

unreasonable nor arbitrary. Hampton's argument fails.

In sum, we reject all of Hampton's arguments challenging the City of Milwaukee's ordinance. Accordingly, the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.