MOUNT HOREB COMMUNITY ALERT, Judy Patenaude, Laura Wenman, Audrey Yapp and Wayne Yapp, Plaintiffs-Appellants,

v.

VILLAGE BOARD OF MT. HOREB, Defendant-Respondent.†

Court of Appeals

*No. 01–2217. Submitted on briefs January 11, 2002.—Decided February 28, 2002.*

2002 WI App 80

(Also reported in 643 N.W.2d 186.)

† Petition to review granted 5-21-02.

713

714

715

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christopher J. Blythe* of *Lawton & Cates, S.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Angela A. James* of *Stafford Rosenbaum LLP*, Madison.

Before Dykman, Deininger and Lundsten, JJ.

¶ 1. DYKMAN, J. This is an appeal from an order denying Mount Horeb Community Alert's petition for a writ of mandamus. The Village Board of Mt. Horeb decided to take no action on Community Alert's petition for direct legislation, which Community Alert had filed pursuant to Wis. Stat. § 9.20(1) (1999–2000).[1] This statute requires a village board to either pass proposed legislation or refer the proposal to the electors. The trial court concluded that the proposed ordinance conflicted with a state statute, which is one of the common law exceptions to § 9.20(1), and denied the writ. We conclude that the exceptions asserted by the Village Board are inapplicable, and therefore reverse.

---

[1] Wisconsin Stat. § 9.20(1) (1999–2000) provides:

> A number of electors equal to at least 15% of the votes cast for governor at the last general election in their city or village may sign and file a petition with the city or village clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or village board or be referred to a vote of the electors.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 2. Because the facts are not in dispute, we are presented with only a question as to the application of WIS. STAT. § 9.20. This is a question of law that we review de novo. *Heitman v. City of Mauston Common Council,* 226 Wis. 2d 542, 546, 595 N.W.2d 450 (Ct. App. 1999).

¶ 3. In 2000, a group of residents of the Village of Mt. Horeb concluded that the Mt. Horeb Village Board should be required to submit construction projects costing at least one million dollars to the Mt. Horeb electors prior to beginning construction of the project.[2] They submitted a petition for direct legislation which reads:

> Section ___ of the Municipal Code is hereby amended to add subsection ___ to read as follows:
>
> _____ VILLAGE CAPITAL EXPENDITURES OF $1 MILLION OR MORE
>
> (1) Prior to the start of any physical construction of any municipally financed (in whole or in part) project requiring a Village capital expenditure of $1 million or more, the Village Board shall submit to the electorate a binding referendum for approval of the project. Failure of the binding referendum shall preclude the Village from proceeding with the project. The wording of any referendum shall provide the specific purpose, location and cost of the project. Nothing in this provision shall be construed to preclude the Village from exercising its role in the planning or design of such publicly financed projects.

---

[2] The electors apparently disagreed with the Village Board's decision to site and build a library. This led them to propose the referendum requirement.

¶ 4. This mandamus action was the result of the Village Board's decision declining to enact the proposed legislation or submit it to a vote of Mt. Horeb's electors. Mandamus is the appropriate method of challenging a municipality's failure to comply with the requirements of WIS. STAT. § 9.20(1). *State ex. Rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 102, 255 N.W.2d 449 (1977).

¶ 5. To begin with, Community Alert asserts that it was wrongly forced to initiate this action. WISCONSIN STAT. § 9.20(1) requires the Village Board to pass the ordinance or submit it to the electors. Community Alert desires a rule requiring a municipality to commence a declaratory judgment action if it does not adopt the ordinance or submit it to the electors. It asks us to "wrest back from village boards and common councils the judicial power to assess the validity of ordinances proposed pursuant to the direct legislation statute." But it is far too late in the day to ask that we set up a new procedure for § 9.20 cases. In *Althouse*, the supreme court said: "We conclude that mandamus is appropriate [when a city council refuses either option of § 9.20(1)] under such circumstances." *Althouse*, 79 Wis. 2d at 102.

¶ 6. We are bound by prior decisions of the supreme court, *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159 (1984), and published opinions of the court of appeals, *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). We agree with Community Alert that appellate decisions have narrowed the applicability of direct legislation, and that the legislature might have intended a broader meaning to the statute. But if Community Alert wants the law changed or interpreted

more broadly so that it requires municipalities to begin lawsuits to void WIS. STAT. § 9.20 legislation, it is the supreme court or the legislature to which this argument should be made.

¶ 7. In *Heitman*, we noted that courts have recognized four exceptions to the WIS. STAT. § 9.20 requirement that a village board either pass requested direct legislation or submit it to the electors. These exceptions are: (1) when the proposed direct legislation involves executive or administrative matters, rather than legislative ones; (2) when it compels the repeal of an existing ordinance or resolution, or compels the passage of an ordinance which would be in clear conflict with existing ordinances or resolutions; (3) when it seeks to exercise legislative powers not conferred on a municipality; and (4) when it would modify statutorily prescribed directives that would bind a municipality if it were attempting to legislate in the same area. *Heitman*, 226 Wis. 2d at 548–49.

¶ 8. Because the Village does not contest that Community Alert properly followed the procedures required by WIS STAT. § 9.20, we will examine the Village's assertions that the proposed legislation runs afoul of all four of the common law exceptions to § 9.20.

## MODIFICATION OF STATUTORILY PRESCRIBED DIRECTIVES

¶ 9. The Village first asserts that the proposed ordinance modifies the statutory procedures for municipal borrowing found in WIS. STAT. ch. 67. While Community Alert responds that its ordinance has nothing to do with borrowing, we will assume that most million dollar projects in a village will involve municipal borrowing.

720

*Conflict with* WIS. STAT. *§ 67.05*

■

¶ 10. The Village notes that WIS. STAT. § 67.05 sets out an elaborate system for villages undertaking municipal borrowing. One feature of the statute is that prior to borrowing, a municipality must adopt an initial resolution authorizing the borrowing. Section 67.05(1). Further, the statute provides that city electors, but not village electors, may adopt an initial resolution in the manner provided by WIS. STAT. §§ 9.20 and 67.05(2)(b). The Village equates the proposed ordinance to an initial resolution, and concludes that there is therefore a conflict between the proposed ordinance and § 67.05(2).

¶ 11. We do not see the conflict the Village does. The proposed ordinance is not an initial resolution. It requires a referendum "prior to the start of any physical construction of any municipally financed . . . project." Borrowing is not and need not be the beginning of a project. Project proposals are usually brought up and debated before municipalities pass initial resolutions authorizing borrowing for the project. Though we agree that WIS. STAT. § 67.05(2) prohibits Village electors from passing initial resolutions, Community Alert's proposed ordinance does not affect the Village's initial resolutions, or the statutory authority for them. While the Village is correct that if it adopted Community Alert's proposed ordinance, a project could be terminated before it begins, we do not see that as conflicting with a statute outlining the procedures for municipal borrowing.

¶ 12. In *Heitman*, we noted that the supreme court has warned that the direct legislative powers of the people should not be unduly restricted. 226 Wis. 2d at 548. Adopting the Village's position here would

unduly restrict the direct legislative powers of Mt. Horeb's electors. We decline to do so.[3]

¶ 13. The Village next asserts that *Henderson v. Hoesley*, 225 Wis. 596, 275 N.W. 443 (1937), supports its assertion that the legislature provided for a whole proceeding in Wis. STAT. § 67.05, and that the proposed ordinance interferes with that proceeding. In *Henderson*, some of Shullsburg's electors sought to require a referendum on the City of Shullsburg's decision to proceed with the purchase of an electric utility. *Id.* at 597. The supreme court determined that Wis. STAT. ch. 197 provided for a complete scheme for municipal acquisition of public utilities, including the submission of approval to the municipal electors. *Id.* at 604. The court concluded that ch. 197 provided a "special and exclusive way" to discontinue municipal plans to acquire a public utility, and that direct legislation permitting discontinuance in a different manner was contrary to the legislative intent of ch. 197. *Id. Henderson* does not apply to Community Alert's proposed ordinance. In

---

[3] The Village also argues that Wis. STAT. § 67.05(5)(b) sets out a long list of projects that require a referendum prior to the municipality issuing bonds for the project, suggesting that the legislature intended the list to be exhaustive. This argument suffers from the same difficulty that the Village's § 67.05(2) argument suffers. The proposed ordinance can apply before the Village Board passes an initial resolution for bonding. The Village points out that § 67.05(7)(f) provides that initial resolutions for regional projects may not be submitted to a referendum. But again, the proposed ordinance is not a § 67.05 referendum. It is part of the political process preceding an initial resolution, and is but one of the many ways in which a proposal to spend electors' taxes might fail. It may seem foolish or obnoxious to the Village Board, but that is often the case with direct legislation. The proposed ordinance does not, however, conflict with state statutes.

*Henderson*, the proposed ordinance would have provided for a second referendum on the proposed acquisition in addition to the one provided in the statute. But Community Alert's proposed ordinance plays no part in municipal borrowing, and therefore does not conflict or change the scheme for municipal borrowing outlined in WIS. STAT. § 67.05. The ordinance would apply whether borrowing or another method was used to finance the proposed project. Our decision is consistent with *Henderson*.

*Conflict with WIS. STAT. § 62.15*

¶ 14. Next, the Village asserts that the proposed ordinance conflicts with other statutory requirements for public projects. The Village reasons that until bids are accepted, a village will not know whether the cost of a proposed project will reach or exceed one million dollars. WISCONSIN STAT. § 62.15(1), applicable to Mt. Horeb under § 8.01, Mt. Horeb Village Code of Ordinances, requires projects that cost more than $15,000 to be submitted to public bids. Thus, the Village argues, "[T]he actual cost of the project will almost certainly be a mystery until after the bids are received, and the project has been awarded to the lowest bidder."

¶ 15. The Village assumes too much. Early in the decisionmaking process, the cost of a project is a political issue for all municipalities. It is unrealistic to assume that the Village would have no idea whether a proposed project would cost $25,000, $750,000 or $1,250,000. The Village's perceived dilemma could pose some practical concern if the estimated cost of the project would be slightly less than one million dollars, but as with most things governed by ordinance, the solution is to err on the side of caution, and submit

projects with costs in the one million dollar price range to the electors.[4] While the Village sees this as expensive and time consuming, those are arguments to be presented to the electors in a Wis. Stat. § 9.20 referendum to adopt or reject the proposed ordinance. They do not show a conflict with state statutes.

¶ 16. Finally, in its arguments concerning conflict between state law and the proposed ordinance, the Village points to Wis. Stat. § 62.15(1b), which permits villages to avoid the public bid procedure in case of emergencies. We agree that the proposed ordinance makes no provision for emergencies. But § 62.15(1b) on its face applies only to cities. It is only applicable to villages if the village board adopts an ordinance doing so. *See* Wis. Stat. § 61.56. Section 8.01 of the Mt. Horeb Village Code of Ordinances does so. The conflict, if one exists, is not between a state statute and a proposed ordinance, but between an existing ordinance and a proposed one. The question is therefore whether the proposed ordinance repeals an existing ordinance or is in clear conflict with one. But there is no conflict with § 8.01 of the ordinances, and the proposed ordinance does not repeal any part of § 8.01. All that is required under that portion of § 8.01 upon which the Village relies is that when the estimated cost of a project exceeds $15,000, the lowest bidder shall be awarded the contract. Section 62.15(1b) as incorporated

---

[4] We also do not accept the Village's argument that an estimate of the cost will be unknown because some contracts have escalator clauses and increased quantity clauses in them. While Wis. Stat § 62.15(1a) and (1c) permit these devices with a fifteen percent limit, there is no reason why the Village cannot consider these clauses when originally determining the expected cost of the project.

in § 8.01 makes the bidding requirement inapplicable when damage to a public facility is deemed an emergency. The proposed ordinance only adds time to emergency repairs, if they are expected to exceed one million dollars, but it does not affect whether a contract must be awarded to the highest bidder. No conflict or repeal exists. The advisability of delaying emergency repairs is another reason why electors might not want to vote to pass the proposed ordinance, but it is not a reason to prevent them from doing so.

## ADMINISTRATIVE OR LEGISLATIVE?

■

¶ 17. Next, the Village argues that Community Alert's proposed ordinance is more administrative than legislative in nature. While the Village asks that we consider tests adopted in other states, we have already addressed this issue in *Save Our Fire Department Paramedics Committee v. City of Appleton*, 131 Wis. 2d 366, 389 N.W.2d 43 (Ct. App. 1986). In *Paramedics Committee* we stated:

> The test of what is a legislative proposition and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence . . . . The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

*Id.* at 376–77 (internal quotes omitted). *Paramedics Committee* also describes ordinances relating to subjects of permanent and general character as legislative,

as opposed to ordinances relating to subjects of temporary and special character, which are regarded as administrative. *Id.* at 376.

¶ 18. Under either test, Community Alert's proposed ordinance is legislative. There is no dispute that the ordinance would be permanent, as this is one of the Village's concerns. And the ordinance pertains to all Village projects that will reach or exceed one million dollars. Although a broader ordinance might be envisioned, the proposed ordinance is not special since it applies to more than one project. The ordinance certainly makes new law. Part of the Village's complaint is that the law will create a host of problems for the Village which it does not have now. It is a new policy for the Village because currently there is no need for a referendum until much later in the planning process, and then only if borrowing is involved. The proposed ordinance does not execute law already in existence. We conclude that Community Alert's proposed ordinance is legislative in nature.

## REPEAL OF EXISTING ORDINANCES

¶ 19. The Village next asserts that Community Alert's proposed ordinance repeals existing legislation. The Village does not identify a particular ordinance that would be repealed, but notes that, using the Village's library project as an example, the Village had adopted motions, resolutions and ordinances to implement decisions, and had committed substantial time and money toward the project. But the Village does not quote or cite to the motions and resolutions. It does not tell us what ordinances and resolutions the Village passed, or how those unknown resolutions and ordinances would be repealed by Community Alert's pro-

posed ordinance. The Village cites no legal authority for its assertion that an unknown motion was legislation. Propositions unsupported by legal authority are inadequate, and we will not consider them. *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370 (Ct. App. 1980). Having not been told of the language of the resolutions and ordinances, we cannot determine whether any specific Village ordinance would be repealed by the proposed ordinance.[5]

¶ 20. The Village cites *Landt v. City of Wisconsin Dells*, 30 Wis. 2d 470, 141 N.W.2d 245 (1966), and *Schaefer v. Village Board of the Village of Potosi*, 177 Wis. 2d 287, 501 N.W.2d 901 (Ct. App. 1993), as authority for the prohibition against using direct legislation to repeal existing legislation. We agree that *Landt* and *Schaefer* so hold, and we agree that Community Alert's proposed ordinance would not be appropriate for submission to the electors if it repealed a Village ordinance. We conclude, however, that the proposal does not have the prohibited effect.

## EXCESS OF POWERS

¶ 21. Next, the Village claims that Community Alert's proposed ordinance exercises powers outside the authority of the Village Board. Again, the Village uses

---

[5] We are told that the motions and resolutions authorized borrowing funds, approved the acquisition of the site, and proceeded with the final construction plans and specifications. The Village assumes that the proposed ordinance would have repealed these motions and resolutions. But, should Community Alert's proposal ultimately be enacted, it may simply come too late to affect an already undertaken Village project. The question of whether the ordinance applies to the library project is not-before us.

the library project as an example, and notes that Wɪs. Stᴀᴛ. § 43.58(1) gives control of the library fund to the library board. It then argues that since only the library board can spend money from the library fund, the proposed ordinance could prevent the expenditure of money by the library board, something the Village itself could not do.

¶ 22. We are not persuaded by this argument. The proposed ordinance addresses "municipally financed" construction projects. There can be no question that the Village Board is authorized to approve or reject such projects in general. If the proposed ordinance is enacted, it may or may not govern specific projects that are under the purview of entities such as the library board. But this question is premature. We are satisfied that the substance of the proposal exercises powers that are within Village Board authority.

## ABILITY TO COMPLY

¶ 23. Finally, the Village asserts that it is impossible to comply with the proposed ordinance. In doing so, the Village Board sets up a "timeline," consisting of twelve steps, beginning with the Village Board's decision to undertake a project, and ending with the beginning of construction. The Village identifies the proposed ordinance as the eighth item on the list. It concludes that this would require the Village to commit itself to a debt obligation before it had any security that the project would proceed.

¶ 24. The Village's argument is mainly a reassertion of arguments it has previously made with regard to Wɪs. Stᴀᴛ. § 67.05. We need not repeat what we have already said about these. And the Village does not explain how compliance with the proposed ordi-

nance would be "impossible." What the Village has done here, as well as throughout its previous arguments, is to place the proposed ordinance in the timeline it has constructed at a point where the proposed ordinance might violate one of the exceptions to WIS. STAT. § 9.20(1). In effect, the Village is asserting that if the proposed ordinance is approved, the Village will invoke the proposed ordinance's requirements at the most inappropriate time in its self-described timeline.[6]

¶ 25. Even the Village admits that the second item on its list is, "The Village develops estimates of the cost of the project, and uses these estimates to determine financing options." There is no reason why the Village could not apply the proposed ordinance at this stage.

¶ 26. We conclude that the Village of Mt. Horeb was not required to seek a declaratory judgment before refusing to act on Community Alert's proposed ordinance. We also conclude that Community Alert's pro-

---

[6] It is the Village that positions the proposed ordinance as the eighth item in its list of requirements for a municipal project. The proposed ordinance does not do so. There is no reason why the proposed ordinance could not be applied prior to the first item on the Village's list of requirements. While the Village complains that it will not know the cost of a project until bids are let, we have already concluded that it defies common sense to believe that a Village Board cannot know the approximate cost of a project before deciding whether the project is worthwhile. And though the Village focuses on the language in the proposed ordinance requiring the "specific cost" of a project, no one can know the actual or specific cost of a project until it is completed. Ordinances are to be interpreted so as not to lead to absurd results. *City of Milwaukee v. Hampton*, 204 Wis. 2d 49, 56, 553 N.W.2d 855 (Ct. App. 1995). It would be absurd to interpret the proposed ordinance so as to require the Village to give the cost of a project, down to the last penny, on a ballot.

posed ordinance does not modify statutory procedures, is legislative in nature, does not repeal existing legislation and does not exercise powers that are outside of the authority of the Village Board. We therefore reverse and remand' for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.