COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2055**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV2102**

**IN COURT OF APPEALS
DISTRICT IV**

WISCONSIN FUEL, LLC,

   PLAINTIFF-APPELLANT,

 V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Wisconsin Fuel, LLC, appeals an order granting summary judgment to the Wisconsin Department of Transportation (DOT) and dismissing Wisconsin Fuel's claim pursuant to WIS. STAT. § 32.195(6) (2019-20).[1] Applying controlling precedent, we affirm.

## BACKGROUND

¶2 The following facts are undisputed. Wisconsin Fuel owns a parcel of land on Dane County Trunk Highway N (the subject property). In 2005, Wisconsin Fuel leased the subject property to a restaurant franchisee, and the franchisee began operating an Arby's restaurant on the premises. As the expiration of the initial ten-year lease term neared, the franchisee assigned the lease to ALB Restaurants, LLC, which took over the operation of the Arby's restaurant. ALB exercised a provision in the lease that renewed the lease for a period of five years, from June 5, 2015, until June 14, 2020.

¶3 In June 2015, Wisconsin Fuel reached an access easement agreement related to the subject property with adjacent property owner Golden Green Properties, LLC.[2] The access easement agreement was reached in anticipation of changes to County Highway N as part of a highway improvement project (the DOT project). The access easement agreement gave Wisconsin Fuel a legal right of access to County Highway N by way of a driveway easement across the Golden Green parcel. Wisconsin Fuel did not construct the access driveway.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Parveen "Paul" Bhardwaj is the sole owner of Golden Green, and he owns Wisconsin Fuel together with his wife.

¶4      In November 2016, DOT recorded an Award of Damages as part of the DOT project, whereby DOT acquired a portion of the subject property, including the right of direct access to Highway N via the two existing driveways that together constituted the subject property's only connection to public roads. Construction then began on the DOT project, with continued use of the existing driveways until DOT closed them in October 2017.

¶5      On August 30, 2017, while ALB was still operating under the renewed 2005 lease, ALB entered into a new and separate lease with Wisconsin Fuel, under which ALB would operate an Arby's on the Golden Green parcel.[3]

¶6      On September 14, 2017, Wisconsin Fuel and ALB entered into an agreement to terminate the original lease that the Arby's franchisee had assigned to ALB.  The termination agreement states that ALB's rent was "paid in full through the closing date" of September 18, 2017, that "all terms of the lease have been satisfied in good faith," and that ALB is "released from any liability as of the Arby's close of business" on September 18, 2017.  The agreement references the new lease, stating the lease would begin in 2018.

¶7      As part of the DOT project, on October 25, 2017, DOT closed off access to the two driveways leading to the subject property.  A new Arby's opened

---

[3] The new lease named Wisconsin Fuel as landlord and ALB as tenant.  At the hearing on the parties' motions for summary judgment, Wisconsin Fuel asserted that the 2017 lease was "void" because the new building housing the Arby's was ultimately built on Golden Green's property and therefore, according to Wisconsin Fuel, the new lease listed the wrong landlord. The circuit court determined that the new lease was not relevant to the legal issue in this case, namely, whether Wisconsin Fuel's alleged rental losses are directly attributable to the DOT project, although the court allowed Wisconsin Fuel to supplement the record with any documentation pertaining to this issue, which the record does not indicate occurred.

on the Golden Green parcel in November 2018, by which time the DOT project had evidently been completed.

¶8    In August 2018, Wisconsin Fuel filed a complaint seeking compensation for rental losses in the amount of $193,380 for the period from September 15, 2017—the date that, according to the complaint, ALB "vacated the subject property and stopped paying rent"—through the end of the original, renewed lease on June 14, 2020, pursuant to WIS. STAT. § 32.195(6).  Following a hearing on the parties' competing motions for summary judgment, the circuit court granted DOT's summary judgment motion and dismissed Wisconsin Fuel's claim for rental losses.  Wisconsin Fuel appeals.

## DISCUSSION

¶9    Wisconsin Fuel argues that the circuit court erred in granting summary judgment in favor of DOT.  For the reasons stated below, we affirm the court's decision, concluding that, based on the undisputed facts, Wisconsin Fuel was not entitled to rental losses as a matter of law under *Rotter v. Milwaukee Expressway & Transportation Commission*, 72 Wis. 2d 553, 241 N.W.2d 440 (1976).

### I.  Summary Judgment Standards and Standard of Review

¶10   "We review *de novo* a circuit court's ruling on summary judgment, and apply the same legal principles." *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." WIS. STAT. § 802.08(2). The purpose of summary judgment is "to avoid trials when there is nothing to try." *Tews v. NHI, LLC*, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860.

¶11 Here, both parties moved for summary judgment, but we resolve this appeal based on DOT's motion and need not address Wisconsin Fuel's motion.[4]

## II. *Rotter* is Dispositive

¶12 In dismissing Wisconsin Fuel's complaint, the circuit court agreed with DOT that, based on the undisputed material facts, Wisconsin Fuel was not entitled to rental losses under WIS. STAT. § 32.195(6). This provision states:

> In addition to amounts otherwise authorized by this subchapter, the condemnor shall reimburse the owner of real property acquired for a project for all reasonable and necessary expenses incurred for:
>
> ….
>
> (6) Reasonable net rental losses when all of the following are true:
>
> (a) The losses are directly attributable to the public improvement project.
>
> (b) The losses are shown to exceed the normal rental or vacancy experience for similar properties in the area.

---

[4] Although Wisconsin Fuel captioned its motion as a motion for summary judgment rather than for partial summary judgment, at both the summary judgment hearing in the circuit court and on appeal, Wisconsin Fuel has acknowledged that it moved for summary judgment only on the issue of whether its rental losses were directly attributable to DOT's project under WIS. STAT. § 32.195(6)(a). Wisconsin Fuel stated at the summary judgment hearing that if the circuit court granted its motion, the court was then required to schedule an evidentiary hearing to determine the normal rental or vacancy experience for properties similar to the subject property, pursuant to § 32.195(6)(b). Thus, Wisconsin Fuel sought only partial summary judgment.

Sec. 32.195(6). Specifically, the court determined that, under ***Rotter***, the rental losses were not "directly attributable" to the DOT project under § 32.195(6)(a) because Wisconsin Fuel chose to terminate the lease with ALB for its own reasons.[5]

¶13 In ***Rotter***, Milwaukee County acquired a building that the Rotters owned and were leasing to a tenant. ***Rotter***, 72 Wis. 2d at 556. By mutual agreement of the Rotters and the tenant, in the approximately six months immediately preceding the taking of the Rotters' property, the tenant paid no rent. ***Id***. After the acquisition, the Rotters filed a claim for rental losses, based on the tenant's nonpayment of rent during those six months. ***Id***. at 554-55. The then-existing statute, WIS. STAT. § 32.19(4) (1965), allowed a property owner to recover rental losses for the year before the taking of the property if, among other requirements, the losses were "caused by" the taking.[6] ***Id.*** at 556. Our supreme

---

[5] The circuit court also concluded that, because Wisconsin Fuel failed to construct the access driveway to Highway N through the Golden Green parcel as it had a right to do under the access easement agreement, it was "Wisconsin Fuel, not the [DOT] project, [that] determined whether the traveling public could reach the Arby's restaurant upon the driveway closures." On appeal, DOT also relies on this alternative ground for summary judgment. Because we conclude that under ***Rotter v. Milwaukee Expressway & Transportation Commission***, 72 Wis. 2d 553, 241 N.W.2d 440 (1976), any rental losses were caused by Wisconsin Fuel's relinquishment of rental payments from ALB and were therefore not directly attributable to the DOT project, we need not consider this additional rationale.

[6] WISCONSIN STAT. § 32.19(4) (1965) provided compensation for

> [n]et rental losses resulting from vacancies during the year preceding the taking of the property, provided that: 1) such loss is limited to the amount that exceeds the average annual rental losses caused by vacancies during the first 4 years of the 5-year period immediately preceding the taking; and 2) such rental loss was caused by the proposed public land acquisition.

(continued)

court upheld the circuit court's dismissal of the Rotters' complaint, concluding that the rental losses were not caused by Milwaukee County's acquisition of the Rotters' property, but were instead caused by the Rotters' decision to release their tenant from the lease:

> Here, for their own reasons, the Rotters chose to release [the tenant] from the obligation to pay rent under the written lease.... Any rent loss sustained by the Rotters under their lease with [the tenant] was, as the trial court found, solely attributable to the Rotters having released [the tenant] from its obligation to pay rent under the written agreement. Such being the situation, the rent loss sustained was not caused by the acquisition of the store building by the county, but by the release of rental obligations agreed to by the Rotters.

*Id.* at 557-58.

¶14    Similarly, in this case, it is undisputed that on September 14, 2017—approximately six weeks before DOT's closure of the driveways on October 25, 2017—Wisconsin Fuel agreed to terminate the lease with ALB and to release ALB from any further rent obligation, effective September 18, 2017. This lease termination occurred shortly after Wisconsin Fuel and ALB negotiated a new lease, which began in November 2018. As the circuit court explained, "Wisconsin Fuel was under no obligation to end the lease with ALB running until 2020. For its own reasons, it chose to terminate the lease." Thus, as in ***Rotter***, Wisconsin

---

We note that in ***Luber v. Milwaukee County***, 47 Wis. 2d 271, 283, 177 N.W.2d 380 (1970), our supreme court determined that the one-year limitation on rental losses caused by condemnation violated the just compensation clause of art. I, sec. 13, of the Wisconsin Constitution. The legislature subsequently amended the statute, eliminating the one-year limitation and replacing the phrase "caused by" with the phrase "directly attributable to." *See* 1971 Wis. Laws, ch. 103, § 4 (repealing and recreating WIS. STAT. § 32.19(4)). There have been no substantive revisions to the language of the statute since 1971, and soon thereafter, the statute was renumbered as WIS. STAT. § 32.195(6). *See* 1973 Wis. Laws, ch. 192, § 4.

Fuel's alleged rental losses were "solely attributable to [Wisconsin Fuel] having released [the tenant] from its obligation to pay rent under the written agreement," and were not attributable to the DOT project. *Id.* at 557.

¶15     Wisconsin Fuel makes various arguments as to why *Rotter* is distinguishable and why the circuit court erred in dismissing its claim for rental losses. However, as discussed below, these arguments are not persuasive.

### III. Wisconsin Fuel's Arguments

#### A. *Rotter*

¶16     Wisconsin Fuel advances several arguments as to why *Rotter* does not apply to bar its claim for rental losses. First, Wisconsin Fuel asserts that the statute as it existed during the pertinent time period in *Rotter* addressed "condemnation blight" but the statute now addresses "relocation benefits." Wisconsin Fuel cites no authority supporting these characterizations of the respective statutes.  Further, Wisconsin Fuel develops no cogent argument explaining how a distinction between condemnation blight and relocation benefits would lead us to a different interpretation of the statute's causation requirement. We need not try to guess what Wisconsin Fuel intends to argue. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶17     Second, Wisconsin Fuel argues that *Rotter* is distinguishable because the statute as it existed during the time period addressed in *Rotter* contained a one-year limitation on rental losses that was eliminated in the version of the statute governing this case. Not until its reply brief does Wisconsin Fuel explain the view that this change represents a legislative intent to "greatly

broaden" the rental losses that can be claimed against a condemnor. Even assuming that we should address an argument that is not made clear until the reply brief, the argument is unavailing because the critical issue here is causation of the rental losses, not when the losses occurred. The statute at the time of *Rotter* stated that rental losses are compensable only if they are "'caused by the proposed public land acquisition.'" *Rotter*, 72 Wis. 2d at 556 (quoting WIS. STAT. § 32.19(4) (1965)). It now states that rental losses are compensable only if "[t]he losses are directly attributable to the public improvement project." WIS. STAT. § 32.195(6)(a). Wisconsin Fuel does not advance any basis for differentiating these phrases and we see no meaningful difference between them.[7] Thus, just as the rental losses in *Rotter* were not "caused by" the acquisition because the landlord voluntarily relieved the tenant from rental payments, the rental losses here are likewise not "directly attributable" to the DOT project for the same reasons.

¶18 Wisconsin Fuel also argues that the release agreement in *Rotter* was a "legally[]significant document because it released the tenant from a legal obligation which the tenant would otherwise have had to pay under the lease." In contrast, according to Wisconsin Fuel, the release agreement in this case was of "minor legal significance," because the driveway barricades that DOT put in place

---

[7] As DOT notes, "caused" means "to serve as a cause or occasion of," and "attribute" or "attributed" means "to explain (something) by indicating a cause." *See* definitions at https://www.merriam-webster.com/dictionary (last visited May 12, 2021). We further observe that in *Rotter*, the court appears to have used "caused by" and "attributable to" interchangeably. *See Rotter*, 72 Wis. 2d at 557-58 ("Any rent loss sustained by the Rotters ... was ... solely *attributable to* the Rotters having released [the tenant] from its obligation to pay rent under the written agreement. Such being the situation, the rent loss sustained was not *caused by* the acquisition of the store building by the county, but by the release of rental obligations agreed to by the Rotters." (emphasis added)).

9

on October 25, 2017, made the premises "untenantable" under WIS. STAT. § 704.07(4), relieving ALB of the obligation to pay rent.[8] Therefore, Wisconsin Fuel asserts, the release agreement released ALB from paying rent only from approximately September 15,[9] 2017—which, according to the complaint, is when ALB vacated the subject property and stopped paying rent—to October 25, 2017, the date DOT barricaded and closed the driveways.

¶19    This argument is unavailing. As a preliminary matter, Wisconsin Fuel has failed to show how WIS. STAT. § 704.07(4) is applicable. That provision, which appears in the chapter of the Wisconsin statutes governing landlord-tenant relationships, addresses untenantability caused by "damage by fire, water, or other casualty or because of any condition hazardous to health," or by a landlord's violation of various statutory duties that "materially affect the health or safety of the tenant." Sec. 704.07(4). None of these statutorily delineated events are at issue here and the provision does not address untenantability as a result of government action.

¶20    More significantly, in both **Rotter** and in this case, the landlords released the tenants from the obligation to pay rent *prior to* any untenantability that could have resulted from the government project. It is undisputed that, by the time DOT barricaded the driveways, Wisconsin Fuel had already relinquished its

---

[8] Wisconsin Fuel actually cites WIS. STAT. § "704.02(4)." However, because § 704.02 does not contain a subsection (4) and addresses severability of rental agreement provisions, whereas WIS. STAT. § 704.07(4) addresses "untenantability," we assume Wisconsin Fuel's citation contains a typographical error.

[9] Although of no consequence to our decision, we note that there appears to be a discrepancy between the September 15 rental termination date alleged in the complaint and the September 18 rental termination date in the agreement terminating the lease.

right to any further rental payments from ALB for the subject property and had entered into a new lease with ALB for an Arby's on a different parcel. Thus, as in *Rotter*, the rental losses were not caused by or directly attributable to the DOT project, but were instead caused by Wisconsin Fuel's decision to relieve ALB from paying rent.

¶21 In sum, we do not see a principled way to distinguish between *Rotter* and the instant case, and we are bound by the decisions of our supreme court. *See Mount Horeb Cmty. Alert v. Village Bd.*, 2002 WI App 80, ¶6, 252 Wis. 2d 713, 643 N.W.2d 186; *see also Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."). Because Wisconsin Fuel voluntarily agreed to terminate the then-active lease with ALB, any alleged rental losses were not directly attributable to the DOT project under *Rotter*. *See Rotter*, 72 Wis. 2d at 557-58.

## B. Resolution of the Issue of Causation Through Summary Judgment

¶22 Wisconsin Fuel contends that the cause of its rental losses is a question of fact that cannot be resolved by summary judgment. We are not persuaded. First, we do not agree that the question of whether the losses are directly attributable to the DOT project is merely a question of fact. Instead, the inquiry involves the application of statutory language to the facts of the case, which we review independently. *See Estate of Genrich v. OHIC Ins. Co.*, 2009 WI 67, ¶10, 318 Wis. 2d 553, 769 N.W.2d 481; *see also Emer's Camper Corral, LLC v. Alderman*, 2020 WI 46, ¶16, 391 Wis. 2d 674, 943 N.W.2d 513 ("Whether the circuit court applied the proper legal standard in analyzing causation is a question of law we review de novo."). Here, it is undisputed that Wisconsin Fuel

released ALB from its rental obligations, and, as we have explained, under ***Rotter*** rental losses are not directly attributable to a project when the property owner voluntarily agrees to release the tenant from its obligation to pay rent.

¶23 Wisconsin Fuel cites no authority that supports its argument that summary judgment procedures may not be applied to determine that a party has not proven causation. Wisconsin Fuel quotes an excerpt from ***Johnson v. Misericordia Community Hospital***, 97 Wis. 2d 521, 560, 294 N.W.2d 501 (Ct. App. 1980), and mentions an unpublished opinion from this court, ***Pranke Holding v. DOT***, No. 2018AP1646, unpublished slip op. (WI App July 23, 2019), but does not explain how these cases support its position on this point. We need not consider Wisconsin Fuel's undeveloped arguments that rely on these cases. *See **Pettit***, 171 Wis. 2d at 646 (we need not address undeveloped arguments). Moreover, we note that neither case supports the proposition that summary judgment may not be granted on the issue of causation, even when, as here, the material facts are undisputed, and controlling precedent decides the issue as a matter of law.

## C. Construction of WIS. STAT. § 32.195(6)(a)

¶24 Wisconsin Fuel argues that the circuit court misapplied the law by failing to construe WIS. STAT. § 32.195(6)(a) liberally in favor of the property owner. *See **Shepherd Legan Aldrian Ltd. v. Village of Shorewood***, 182 Wis. 2d 472, 478, 513 N.W.2d 686 (Ct. App. 1994) ("Because the power of eminent domain is 'extraordinary,' courts strictly construe the condemnor's power, while liberally construing provisions that favor the owner, including statutes that regulate the compensation to be paid to the owner." (quoting ***Standard Theatres, Inc. v. DOT***, 118 Wis. 2d 730, 742-43, 349 N.W.2d 661 (1984))).

12

¶25    However, even applying WIS. STAT. § 32.195 in the manner Wisconsin Fuel suggests, *Rotter* nevertheless controls and precludes a claim for rental losses.  Thus, Wisconsin Fuel's statutory construction argument does not assist it.

### D.  The ALB Affidavit

¶26    Wisconsin Fuel contends that the evidence it presented on summary judgment suffices to show that its rental losses were "directly attributable" to the DOT project within the meaning of WIS. STAT. § 32.195(6)(a) and that summary judgment in favor of DOT was therefore in error.  Specifically, Wisconsin Fuel relies on an affidavit it submitted from ALB's manager, Michael Breitfelder, who averred that ALB closed the restaurant and moved out of the parcel owned by Wisconsin Fuel because DOT "had closed both driveways which the property had to County Trunk N, leaving the property with no access to a public road or street, thereby making it impossible for the public to get to the restaurant."

¶27    In so arguing, Wisconsin Fuel contrasts this case with *Pranke Holding*, an unpublished decision in which this court upheld a circuit court's determination in favor of DOT on the causation issue, concluding that the landlord failed to provide evidence as to why the subject lease was terminated.  *Pranke Holding*, No. 2018AP1646, ¶¶17-18.  Wisconsin Fuel argues that, unlike the claimant in *Pranke Holding*, Wisconsin Fuel provided evidence, namely, the Breitfelder affidavit, showing that the DOT project was the reason that the tenant moved off of the subject property.

¶28    We first observe that, to the extent that the Breitfelder affidavit suggests that ALB physically closed the restaurant and moved from the subject property *after* DOT's October 25, 2017 closure of the two driveways, Wisconsin

13

Fuel does not argue this on appeal. Indeed, Wisconsin Fuel's own complaint and in its briefing on appeal contradict this by stating that ALB vacated the property and stopped paying rent on September 15, 2017, *before* the closure. Further, such an assertion would also contradict the lease termination agreement entered into on September 14, 2017, which shows an effective date of September 18, 2017. Moreover, even accepting the general premise in the Breitfelder affidavit that the anticipated DOT project was instrumental in causing ALB to leave the subject property, *Rotter* nonetheless defeats Wisconsin Fuel's claim for rental losses. This is so because there is no dispute that, prior to DOT's closure of the driveways, Wisconsin Fuel voluntarily terminated its lease with ALB, thereby relinquishing the rental payments it was entitled to under the lease. Breitfelder does not aver differently. And under *Rotter*, these facts are sufficient to show as a matter of law that the rental losses are not "directly attributable" to the DOT project and therefore not compensable under WIS. STAT. § 32.195.[10]

¶29 We further note that Wisconsin Fuel's reliance on *Pranke Holding* is misplaced because that case did not involve a landlord voluntarily releasing a tenant from rental payments, as occurred here and in *Rotter*. Instead, the tenant

---

[10] In its reply brief, Wisconsin Fuel also refers to an affidavit from Wisconsin Fuel's co-owner, Bhardwaj, which states that "DOT's highway improvement project was the sole cause of Wisconsin Fuel, LLC entering into the above-described documents and it was the sole cause of Wisconsin Fuel's rent loss for the Arby's restaurant that was located on the subject property." As Wisconsin Fuel acknowledges, this affidavit was submitted in support of Wisconsin Fuel's motion for reconsideration that was filed after the circuit court issued its oral decision dismissing Wisconsin Fuel's claim, but prior to the court's written order. Notably, the record indicates that the motion for reconsideration was subsequently withdrawn. It is therefore questionable whether the Bhardwaj affidavit was considered by the circuit court or may be considered by this court on appeal. However, even taking into account the Bhardwaj affidavit, the outcome of this case would be no different. The Bhardwaj averments, to the extent that they do not simply state legal conclusions, do not assist Wisconsin Fuel for the same reasons that the Breitfelder averments do not assist it.

unilaterally terminated its lease with the landlord after DOT acquired a portion of the property that it was leasing to the tenant. *Pranke Holding*, No. 2018AP1646, ¶4.

¶30 In sum, the evidence that Wisconsin Fuel presented was not sufficient to overcome the holding in *Rotter*, pursuant to which Wisconsin Fuel's claim under WIS. STAT. § 32.195(6) fails.

## CONCLUSION

¶31 For the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.